**FILED**
**10/13/2020 10:45 AM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

SHAUNA CONNORS )
)
vs. )
)
PROGRESSIVE UNIVERSAL INSURANCE COMPANY )

**20CH00000584**

Gen No. _____

## CERTIFICATE OF ATTORNEY – CIVIL DIVISION

1) Pursuant to Local Rule 2-2.01(c), I hereby certify that:

- ☑ There has been no previous Voluntary or Involuntary Dismissal of the subject matter of this litigation.

- ☑ There is no other litigation presently pending in the county involving these parties.

- ☐ There has been a previous Voluntary or Involuntary Dismissal of the subject matter of this litigation and at the time of dismissal that Case No. _____ was assigned to the

  Honorable _____

- ☐ There is other litigation presently pending in the county involving the parties to or subject matter to this lawsuit and that case(s) is/are assigned Case No.(s)_____ which is/are assigned to the

  Honorable _____

2) Are you seeking any injunctive relief?

- ☑ Yes - Select the appropriate case subtype under the Chancery-CH heading below.
- ☐ No - Select the appropriate non-Chancery case subtype below.

This data is being gathered for administrative purposes and will not be used for any other purpose.

**Arbitration – AR**
- ☐ Arbitration/Tort
- ☐ Arbitration/Contract
- ☐ Foreign Judgment
- ☐ Other subtype _____

**Chancery – CH**
- ☐ Residential Mortgage Foreclosure
- ☐ Residential Mortgage Foreclosure w/Mechanics Lien
- ☐ Non-Residential Mortgage Foreclosure
- ☐ Injunction
- ☐ Specific Performance
- ☐ Mechanics Lien Foreclosure
- ☐ Complaint for Rescission
- ☐ Partition
- ☐ Quiet Title
- ☑ Class Action
- ☐ Structured Settlement
- ☐ Foreign Judgment
- ☐ Other subtype _____

**Eminent Domain – ED**
- ☐ Eminent Domain
- ☐ Condemnation
- ☐ Other subtype _____

**Law Magistrate – LM**
- ☐ Eviction
- ☐ Eviction as result of mortgage foreclosure
- ☐ Replevin
- ☐ Detinue
- ☐ Distress for Rent
- ☐ Foreign Judgment
- ☐ Confirm Arbitrator's Award
- ☐ Confession of Judgment
- ☐ Other subtype _____

**Law – L**
- ☐ Tort
- ☐ Contract
- ☐ Product Liability
- ☐ Medical Malpractice
- ☐ Legal Malpractice
- ☐ Forcible Entry and Detainer
- ☐ Replevin
- ☐ Accounting Malpractice
- ☐ Foreign Judgment
- ☐ Confirm Arbitrator's Award
- ☐ Other subtype _____

**Municipal Corporation – MC**
- ☐ Annexation
- ☐ Disconnection
- ☐ Other subtype _____

**Miscellaneous Remedy – MR**
- ☐ Declaratory Judgment
- ☐ Corporation Dissolution
- ☐ Election Contest
- ☐ Mandamus
- ☐ Habeas Corpus
- ☐ Review of Administrative Proceeding/Statutory
- ☐ Review of Administrative Proceeding/Certiorari
- ☐ Quo Warranto
- ☐ Change of Name
- ☐ Forfeiture
- ☐ Fugitive from Justice
- ☐ Search Warrant
- ☐ Application for Eavesdropping Device
- ☐ Foreign Judgment
- ☐ Non-Attendance of Jurors
- ☐ Miscellaneous
- ☐ Other subtype _____

**Tax – TD**
- ☐ Deeds
- ☐ Other subtype _____

**Probate – P**
- ☐ Decedent/Testate > $15,000
- ☐ Decedent/Intestate > $15,000
- ☐ Decedent/Testate $15,000 or less
- ☐ Decedent/Intestate $15,000 or less
- ☐ Guardianship of Person/Disabled Person
- ☐ Guardianship of Estate/Disabled Person
- ☐ Guardianship of a Person and Estate/Disabled Person
- ☐ Guardianship of Person/Minor
- ☐ Guardianship of Estate/Minor
- ☐ Guardianship of Person and Estate/Minor
- ☐ Proof of Heirship Alone
- ☐ Foreign Judgment
- ☐ Other subtype _____

**Tax – TX**
- ☐ Objections
- ☐ Disposition of Collections of Judgment of Settlement
- ☐ Sale in Error
- ☐ Other subtype _____

Print Name  JEFFREY A. BERMAN _____

Signature  /S/ Jeffrey A. Berman - ARDC 6196251 _____

☑ Attorney          ☐ Self-Represented Litigant

171-366 (Rev 7/18)

FILED
10/13/2020 10:45 AM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

20CH00000584

SHAUNA CONNORS

       Plaintiff(s)

   vs.

Gen No: _____

PROGRESSIVE UNIVERSAL INSURANCE COMPANY

       Defendant(s)

**JURY DEMAND**

The  x  plaintiff(s)  defendant(s) in the above entitled cause demand a jury for trial of said cause.

Plaintiff, Shauna Connors

_____

By:    /s/ Jeffrey A. Berman
      Their Attorney(s)/Pro Se

Prepared by:
Attorney's Name:   Jeffrey A. Berman/Anderson + Wanca
Address:   3701 Algonquin Rd., Suite 500
City:   Rolling Meadows    State:   IL
Phone:   847-368-1500   Zip Code:   60008
ARDC:   6196251
Fax:   847-368-1501
E-mail address:   jberman@andersonwanca.com

171-109 (Rev 10/13)

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS**

| | |
|---|---|
| SHAUNA CONNORS, individually and on behalf of a class of similarly-situated persons, | ) ) ) ) ) ) ) |
| Plaintiff(s) | ) |
| vs. | ) ) ) |
| PROGRESSIVE UNIVERSAL INSURANCE COMPANY c/o CT Corporation System, Reg. Agent 301 S. Bedford St. Madison, WI 53703 | ) ) ) ) ) ) ) ) |
| Defendant(s) | ) |

20CH00000584

Case No: _____

SUMMONS

To each defendant:

     You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, not counting the day of service.  If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

     E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.  If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.

To the officer:

     This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so indorsed.

171-138 Rev 07/18

This summons may not be served later than 30 days after its date.

10/13/2020

WITNESS _____

*Erin Cartwright Weinstein*

ERIN CARTWRIGHT WEINSTEIN,
Clerk of Court

JH

Prepared by:

Name: Jeffrey A. Berman / ANDEROSN + WANCA _____   Pro Se ☐

Address: 3701 Algonquin Road, Suite 500 _____

City: Rolling Meadows _____   State: IL _____

Phone: 847/368-1500 _____   Zip Code: 60008 _____

ARDC #: 6196251 _____

Fax: 847-368-1501 _____

E-mail address: jberman@andersonwanca.com _____

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required.)

Date of Service _____, 20_____ (to be inserted by officer on copy left with defendant or other person).

171-138 Rev 07/18

SHERIFF'S FEES

( Service and return ............................................... $ _____
(
( Miles_____   ............................................... $ _____
(
( Total................................................... $ _____

_____

Sheriff of  _____ County

I certify that I served this summons on defendants as follows:

(a)-(Individual defendants – personal):

(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant).

_____

_____

_____

_____

(b)-(Individual defendants – abode):

By leaving a copy of the complaint at the usual place of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons.  (The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person).

_____

_____

_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Mailing Address | Date of mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(c)-(Corporate defendants):

By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent, officer or agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d)-(Other service):

_____

_____

_____

_____ Sheriff of  _____County
By: _____
(Deputy)

**FILED**
**10/13/2020 10:45 AM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Shauna Connors, individually and on behalf of a class of similarly situated persons, | ) ) ) | **20CH00000584** |
| Plaintiff, | ) ) | **Case No. _____** |
| v. | ) ) | **CLASS ACTION** |
| Progressive Universal Insurance Company, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Shauna Connors ("Plaintiff"), through her attorneys, brings this class action lawsuit on behalf of herself and all other persons similarly situated, who were insureds under Defendant, Progressive Universal Insurance Company's ("PUIC" or "Defendant") policies of automobile insurance (the "Policies"), and except as to those allegations pertaining to Plaintiff and Plaintiff's own actions, which allegations are based upon personal knowledge, Plaintiff alleges the following upon information and belief and investigation of Plaintiff's counsel against PUIC:

## NATURE OF THE ACTION

1.      This is a class action for breach of contract and for unjust enrichment in the alternative.

2.      Plaintiff is a customer of PUIC, which issued an insurance policy to Plaintiff for private passenger auto insurance including Collision vehicle damage coverage for Plaintiff's automobile (Part IV –Damage To A Vehicle, Collision Coverage).

3.      As generally described by PUIC, "Collision coverage pays for damages to your

vehicle if you're in an accident, regardless of fault."[1]

4.      As described by PUIC, Collision coverage will either "pay to repair the damage to your vehicle or replace it."[2]

5.      Under Collision coverage, PUIC specifically states it will pay for "loss" caused by a collision.

6.      The Policy does not contain a definition of "loss" in either the General Definitions section or in the Additional Definitions section of Part IV.

7.      As described by PUIC, "A 'total loss' in car insurance is a term insurers use when the cost to repair your car is more than the value of the vehicle."[3] Or, in other words, "a vehicle is a total loss when the cost to return it to its pre-loss condition is greater than the value of the vehicle."[4] If a car "is determined a total loss," PUIC promises to pay the insured or its lienholder "payment for the value of your car (minus any applicable deductible)."[5]

8.      For property damage to a vehicle, including under Collision coverage, the Policy states its "limit" of the amount it will pay for "loss" to a damaged vehicle is the lower of either the "actual cash value" ("ACV") of the damaged vehicle, the "amount necessary to replace" the vehicle, the "amount necessary to repair" the vehicle, or an alternative sum specified on the declarations page.

9.      The Policy does not define ACV, a term which is susceptible of several meanings and thus is ambiguous, although it does state that the ACV "is determined by the market value, age, and condition of the vehicle at the time the loss occurs."

---

[1]      https://www.progressive.com/auto/ (last visited July 29, 2020).
[2]      https://www.progressive.com/answers/collision-insurance/ (last visited July 29, 2020).
[3]      https://www.progressive.com/answers/what-happens-when-car-is-totaled/ (last visited July 29, 2020).
[4]      https://www.progressive.com/claims/faq/total-loss/ (last visited July 29, 2020).
[5]      https://www.progressive.com/claims/faq/total-loss/ (last visited July 29, 2020).

10. State title and transfer fees are part of the "loss" caused by damage to a total loss vehicle because they are required costs involved with the purchase of any replacement vehicle in Illinois.

11. Sales taxes applicable to the purchase of a replacement vehicle also are part of the "loss" caused by damage to a total loss vehicle because they are required costs involved with the purchase of any replacement vehicle in Illinois. The sales tax collected for motor vehicle transactions consists of a base state sales tax rate, plus applicable regional and local sales taxes.

12. Title and transfer fees, and applicable taxes, are part of the ACV because they are costs applicable to the purchase of any replacement vehicle in Illinois.

13. Title and transfer fees, and applicable taxes, are part of the amount necessary to replace a vehicle because they are costs applicable to the purchase of any vehicle in Illinois, and therefore part of the replacement cost of any vehicle.

14. To the extent the Policy seeks to limit coverage for a total loss vehicle to an amount that does not include the full amount of title and transfer fees and applicable taxes it is in conflict with Illinois state law.

15. The Policy, in a section titled "Terms of Policy Conformed To Statutes" expressly states that if in conflict, the provisions of the policy shall be deemed to "conform to" applicable state law.

16. In cases of total loss and when a policy provides for the adjustment and settling of claims on the basis of actual cash value or replacement cost, moreover, Ill. Admin. Code tit. 50, § 919.80 (the "Code") requires that the insurance company choose between providing a replacement vehicle that meets certain standards, 50 IL ADC § 919.80(c)(1), or a cash settlement calculated according to a few different methodologies. *Id.* at § 919.80(c)(2).

17.     If the insurance company provides a replacement vehicle, the Code requires it to reimburse the insured for "applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the vehicle." *Id.* at § 919.80(c)(3)(A).

18.     If the insurance company provides a cash settlement, and if within thirty days of providing that settlement the insured has purchased a new vehicle, the insurance company has to reimburse the insured for "applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the [new] vehicle, but not exceeding the amount payable on account of the value of the total loss vehicle." *Id.* at § 919.80(c)(3)(A)(i).

19.     As such, if the vehicle is determined to be a total loss, and if the policy provides for the adjustment of the claim on the "basis of actual cash value or replacement," then the insurance company has two options (and two options only): either replace the vehicle in compliance with § 919.80(c)(1), or provide a cash settlement based on the market value of the insured vehicle in compliance with § 919.80(c)(2).

20.     The limitation contained within the Code, that the cash settlement shall not exceed "the amount payable on account of the value of the total loss vehicle," limits only the amount of "applicable sales taxes and transfer and title fees" that the company must reimburse — not the total amount of the cash settlement. 50 IL ADC § 919.80(c)(3)(A)(i).

21.     If the insured purchases a vehicle worth more than the value of the vehicle that was a total loss, the Code says that the insurance company only has to pay the "sales taxes and transfer and title fees" that would have been due had the insured purchased a replacement vehicle worth exactly as much as the value of the total loss vehicle (plus the underlying cash settlement amount). *Id.*

22.     PUIC is thus responsible to pay sales taxes and transfer and title fees for a

4

replacement vehicle for one suffering a total loss in a collision, either as part of the "loss" caused by the damage, part of the cost to "replace" the vehicle, or as a component of ACV, as those terms are not defined by PUIC in the Policy, or by virtue of the requirements of the Code and comparable requirements under other states' laws and regulations.

23.     When Plaintiff suffered a total loss of Plaintiff's insured vehicle, however, PUIC failed to pay Plaintiff the applicable sales taxes and transfer and title fees Plaintiff was entitled to receive for Plaintiff's total loss claim under Plaintiff's PUIC insurance policy.

24.     While PUIC ultimately remitted certain funds denominated on the remittance as "sales tax reimbursement" in connection with Plaintiff's Claim, it failed to pay Plaintiff the full amount of applicable sales taxes and transfer and title fees. Specifically, PUIC paid only the base state sales tax and failed to pay the applicable regional or local sales tax. Consequently, PUIC breached its obligations under the Policy.

25.     The underpayment to Plaintiff was not, on information and belief, an isolated incident. To the contrary, it is a fundamental component of PUIC's business practices.

26.     Simply stated, PUIC has systematically underpaid its insureds—including Plaintiff and the other Class members—who have suffered the total loss of their vehicles, by failing to pay the full amount of applicable sales taxes and transfer and title fees, despite being legally obligated to pay such costs.

27.     As a result, on information and belief, PUIC has unfairly and unjustly retained substantial sums that should have been paid to policyholders who suffered a total loss of their insured vehicles. PUIC thereby breached its contract with Plaintiff and other Class members and was unjustly enriched through its unlawful practice.

28.     This lawsuit is brought on behalf of Plaintiff, individually and on behalf of a

Class, the members of which were not paid the full amount of applicable sales taxes and transfer and title fees as part of their total loss claims.

29.     Through this class action, Plaintiff seeks to recover damages for those Class members who have been damaged by PUIC's unlawful practice of underpaying applicable sales taxes and transfer and title fees as part of total loss claims, or alternatively to require restitution of those amounts.

## PARTIES

30.     Plaintiff is a citizen and resident of Illinois, domiciled in the Village of Libertyville, in Lake County. On or about July 30, 2018, Plaintiff suffered a total loss of a vehicle covered by a policy of insurance issued by PUIC to Plaintiff.

31.     On information and belief, PUIC is a Wisconsin corporation with its home office located in Wisconsin and is licensed to do business in the State of Illinois.

32.     On information and belief, PUIC is a subsidiary of the Progressive Corporation and operates as part of the Progressive Group of insurance companies.[6]

33.     On information and belief, for 2019, the Progressive Group (including PUIC) was ranked number 3 in premiums written for total private passenger auto coverage among insurers nationwide.[7] For 2018, it also was ranked number 3 in that category.[8]

34.     On information and belief, also for 2018, the Progressive Group was ranked number 3 in premiums written for private passenger auto physical damage coverage among

---

[6]     *See*     https://www.sec.gov/Archives/edgar/data/80661/000119312510044296/dex21.htm (last visited July 29, 2020).

[7]     *See* https://www.naic.org/documents/web_market_share_property_casualty.pdf?17 (p. 6) (last visited July 29, 2020).

[8]     *See* https://naic.org/prod_serv/MSR-PB-19.pdf (p. 439) (last visited July 29, 2020).

6

insurers nationwide.[9] It also ranked fifth in Illinois in that category.[10]

35.     On information and belief, PUIC is licensed to write automobile insurance in Illinois, and several other states.[11]

36.     On information and belief, in 2019, PUIC wrote a total of $491,180,607 in direct premiums for private passenger automobile physical damage insurance coverage.[12]

37.     On information and belief, in 2018, PUIC with over $106 million in direct premiums written, claimed 3.16 percent of the Illinois private passenger auto physical damage insurance market, according to the Illinois Department of Insurance Market Share Report.[13]

38.     PUIC is the underwriting insurance company for Plaintiff's automobile insurance Policy, which was in effect in July 2018, when Plaintiff's insured vehicle was involved in a collision that rendered the vehicle a total loss.

## JURISDICTION AND VENUE

39.     Jurisdiction is proper pursuant to 735 ILCS 5/2-209, and venue is proper pursuant to 735 ILCS 5/2-101 because Plaintiff is a resident of Lake County, Illinois, PUIC does business, issues insurance policies and settles claims for automobile losses in Illinois, and particularly in Lake County.

---

[9]     *See* https://naic.org/prod_serv/MSR-PB-19.pdf (p. 419) (last visited July 29, 2020).
[10]    See https://naic.org/prod_serv/MSR-PB-19.pdf (p. 426) (last visited July 29, 2020).
[11]    *See* https://www.naic.org/cis_refined_results.htm?TABLEAU=CIS_LICENSING&COCODE=21727&REALM=PROD (last visited July 29, 2020).
[12]    *See* https://www.naic.org/cis_refined_results.htm?TABLEAU=CIS_FINANCIAL&COCODE=21727&REALM=PROD (last visited July 29, 2020).
[13]    *See* https://insurance.illinois.gov/Reports/Market_Share/2018/2018MarketSharePC.pdf (p. 251) (last visited July 29, 2020).

## FACTUAL ALLEGATIONS

**A.    The PUIC Policies.**

40.    At all relevant times, Plaintiff had an automobile insurance Policy underwritten and issued by PUIC, policy number 915001009, providing coverage for the policy period from May 19, 2018 to August 10, 2018, (the "Policy"). The Policy provided physical damage coverage for Plaintiff's 2010 Jeep Liberty (the "Insured Vehicle"). The Policy provided coverage, including Collision coverage (Part IV– Collision Coverage), under standard terms and conditions for policies issued by PUIC. A copy of a Verification of Insurance and applicable Policy Form 9611D IL is attached as Exhibit A.

41.    Upon information and belief, policy form 9611D IL is a standard policy form with standard coverage terms and conditions that has been used PUIC for its automobile insurance policies across the states in which it writes coverage.

42.    Upon information and belief, automobile insurance policy forms used by PUIC other than policy form 9611D IL have substantially comparable or identical material terms and conditions relating to the Collision coverage at issue here.

43.    Upon information and belief, each Class member was insured under PUIC automobile insurance policies using policy form 9611D IL, or a policy otherwise containing pertinent coverage terms that were materially identical to those in Plaintiff's Policy.

44.    The Policy provides "Collision Coverage" in Part IV, which provides, in pertinent part, that PUIC "will pay for sudden, direct and accidental loss … resulting from a collision."

45.    The Policy defines "collision" to mean, in pertinent part, "the upset of a vehicle or its impact with another vehicle or object."

46.    The Policy does not define "loss."

47.    The Policy provides that PUIC will pay for loss caused by a collision up to its limit of liability.

48.    The Policy represents that the limit of PUIC's liability for loss is the lower of either the "actual cash value" ("ACV") of the damaged vehicle, the "amount necessary to replace" the vehicle, the "amount necessary to repair" the vehicle, or an alternative sum specified on the declarations page.

49.    The Policy does not define ACV, a term which is susceptible of several meanings and thus is ambiguous. The Policy states merely that ACV "is determined by the market value, age, and condition of the vehicle at the time the loss occurs."

50.    The Policy also provides that PUIC, may pay for the loss in money, or by repairing or replacing the damaged or stolen vehicle.

**B.    PUIC Is Required To Pay For Applicable Sales Taxes, And Transfer And Title Fees Involved With The Purchase Of A Replacement Vehicle As Part Of Its Payment For A Total Loss Claim.**

51.    Vehicles must be properly titled in order to be legally driven on roadways. *See, e.g.,* 625 ILCS 5/3-101 ("every owner of a vehicle which is in this State and for which no certificate of title has been issued by the Secretary of State shall make application to the Secretary of State for a certificate of title of the vehicle").

52.    Vehicles also must have proper license plates (or tags) in order to be legally driven on roadways. *See, e.g.*, 625 ILCS 5/3-401, 625 ILCS 5/3-502, 625 ILCS 5/3-801, 625 ILCS 5/3-815.

53.    Upon information and belief, Illinois imposes a form of transfer and title fees, which include the costs of registration and license plates, relating to the purchase of a private passenger vehicle.

54.     Upon information and belief, the state of Illinois, and many local governmental subdivisions, also imposes one or more forms of transactional taxes, including among others sales taxes, use taxes, personal property taxes, luxury vehicle taxes or other forms of taxes on, or related to the purchase or lease of a vehicle.

55.     As a consequence, under the law of Illinois, and in every other state, an insured vehicle cannot be replaced without payment of those title and transfer fees and applicable taxes. Those costs are, quite literally, part of the replacement cost of every totaled vehicle.

56.     The Policy neither references, nor explicitly defines "loss," or a "total loss," or a "replacement cost." The Policy also does not define ACV. These terms are susceptible of several meanings and thus are ambiguous. However, the limit of coverage provided is stated to be either the ACV or the replacement cost. The Policy therefore requires payment of ACV or replacement cost for a total loss.

57.     In addition, Illinois, along with a number of other states, specifically requires, through applicable statute or regulation, that insurers pay all title and transfer fees in connection with a total loss.[14]

58.     Title fees and license transfer fees, and transactional sales taxes are "applicable" to the replacement of any vehicle because a vehicle cannot be replaced without payment of such fees and taxes, and they are a necessary prerequisite to lawfully putting a motor vehicle on the road.

59.     Including compensation for title and transfer fees and applicable taxes also is consistent with the reasonable expectation of an insured. An insured pays for the maximum coverage under a policy (in this case either the ACV or replacement cost) with the expectation of

---

[14]     *See* Ill. Admin. Code tit. 50, § 919.80(C).

10

receiving such protection when the insured suffers the maximum loss (a total loss of the vehicle).

**C. PUIC Does Not Pay The Required Title and Transfer Fees And Taxes.**

60.     By representing that it will pay the ACV or the amount necessary to replace the damaged vehicle in the event of a total loss, PUIC, through the Policy, promises to pay the full amount of title and transfer fees, and applicable sales taxes, as part of its automobile insurance coverage.

61.     Contrary to its legal obligations, and specific representations, PUIC does not pay the full amount of applicable title and transfer fees and sales taxes to its total loss insureds.

62.     By failing to include the full amount of the title and transfer fees and sales taxes in making total loss payments to Plaintiff and the other Class members, PUIC breached its contracts with Plaintiff and the other Class members, and was unjustly enriched through its unlawful practice.

63.     The aforementioned scheme – failing to pay title and transfer fees and applicable taxes – is, on information and belief, a common scheme implemented by PUIC in a uniform and identical manner.

**D. Plaintiff Suffered A Total Loss And Was Not Paid The Applicable Title And Transfer Fees And Sales Taxes As Required By The Policy And State Law.**

64.     On or about July 30, 2018, Plaintiff's insured vehicle was involved in a collision that rendered the vehicle a total loss. As a result, Plaintiff submitted a property damage claim under the Policy with PUIC (the "Claim").

65.     Following the submission of the Claim, PUIC informed Plaintiff that it had determined that Plaintiff's insured vehicle was a total loss with a market value of $6,808.43 and a "Settlement Value" (the Market Value less a $500.00 deductible) of $6,308.43.

66.     The market value of the insured vehicle was calculated by a third-party vendor,

11

Mitchell International, Inc. ("Mitchell"), which estimates totaled vehicles' market valuations based on the cost to purchase comparable vehicles that most closely resemble the totaled vehicle. The Market Value is calculated by applying certain specified loss vehicle adjustments to a base value. Neither the base value nor the adjustments used include or reflect vehicle title and transfer fees or sales taxes. *See* Exhibit B (Vehicle Valuation Report).

67.     On information and belief, PUIC contracts with Mitchell to provide Vehicle Valuation reports for its use. PUIC then uses the Market Value stated those reports as a basis to determine the ACV of insured vehicles for purposes of claim resolution.

68.     PUIC, however, paid Plaintiff and the other Class members only the Settlement Value (Market Value of the damaged vehicle less the deductible) as calculated by PUIC or its vendor, along with and amount denominated as a "sales tax reimbursement," but which did not include either the full amount of either applicable sales taxes or title and license transfer fees.

69.     For Plaintiff's claim, PUIC paid Plaintiff's lienholder the Settlement Value calculated by Mitchell of $6,308.43, and what it titled a "Sales Tax Reimbursement" of $621.55. *See* Advice For Payment 2776917059, dated August 21, 2018, attached as Exhibit C; Advice For Payment 2023670215, dated November 6, 2018, attached as Exhibit D.

70.     Title fees and transfer fees are mandatory under applicable law, they constitute an inextricable part of a vehicle purchase, and thus are items which PUIC was contractually obligated to pay as part of the loss incurred by its insureds who suffered a total loss of their insured vehicle, up to the amount that would have been due had the insured purchased a replacement vehicle worth exactly as much as the ACV of the total loss vehicle. 50 IL ADC § 919.80(c)(3)(A)(i).

71.     Applicable sales taxes likewise are mandatory under applicable law, they constitute an inextricable part of a vehicle purchase, and thus are items which PUIC was

contractually obligated to pay as part of the loss incurred by its insureds who suffered a total loss of their insured vehicle, up to the amount that would have been due had the insured purchased a replacement vehicle worth exactly as much as the ACV of the total loss vehicle. 50 IL ADC § 919.80(c)(3)(A)(i).

72.     At the time that Plaintiff purchased a replacement vehicle, Plaintiff was assessed and paid a charge $221.00 for the applicable title and license transfer fees. A truncated copy of the Bill of Sale, reflecting the amount of title and transfer fees paid as part of the transaction, is attached as Exhibit E. That document and information was provided to PUIC by Plaintiff as part of her submissions for the Claim. PUIC's payments, on their face, did not reflect reimbursement for the $221.00 in title and license transfer fees Plaintiff incurred.

73.     In accordance with the Tax Rate Finder published by the Illinois Department of Revenue on its website, the sales tax rate applicable to a purchase of an automobiles by Plaintiff on July 30, 2018, the date of loss stated on PUIC's documents, was Seven Percent (7%).[15] PUIC's payments on the Claim did not include reimbursement for sales taxes at the applicable sales tax rate of 7%.

74.     On information and belief, PUIC now asserts that it paid sales taxes at a rate of 6.25% based on the ACV ($6,808.43) of the total loss vehicle, or $425.55. PUIC thus paid only the base state sales tax and failed to pay the regional or local sales tax applicable to the purchase of Plaintiff's replacement vehicle.

75.     On information and belief, PUIC also now asserts that as part of the remittance titled "sales tax reimbursement," it paid title and license transfer fees of $196.00.

---

[15]     *See* https://mytax.illinois.gov/_/ (last visited September 3, 2020) (The Tax Rate Finder on the Illinois Department of Revenue website allows a search by municipality and specific date to find the applicable sales tax rate). A copy of the results of that search for the applicable tax rate for a resident of Libertyville, Illinois, on July 30, 2018, is attached as Exhibit F.

13

76.     On information and belief, the amounts of sales taxes ($425.55) and title and transfer fees ($196.00) now claimed by PUIC to have been paid as part of the "sales tax reimbursement" total $621.55, which matches the amount of the remittance. *See* Exhibit D.

77.     The documentation provided by PUIC to Plaintiff as part of the Claim payment process, and specifically the remittance advice, did not reflect the composition or manner by which the "sales tax reimbursement" amount was calculated by PUIC. By failing to make any such disclosure, PUIC actively concealed its failure to properly calculate and/or pay Plaintiff the amount of applicable sales tax and license and title fees she incurred to obtain ownership of a replacement vehicle, as required by the Policy and state law.

78.     Based on the applicable sales tax rate in effect at the time of loss, 7.0%, the correct sales tax amount if calculated based on the ACV of the totaled vehicle being replaced was $476.59 ($6,808.43 x 7.0% = $476.59). Assuming for the sake of argument that PUIC included $425.55 as part of the "sales tax reimbursement" payment, as it now asserts, PUIC underpaid the applicable sales tax by $51.04 ($476.59 - $425.55 = $51.04).

79.     Plaintiff incurred $221.00 in applicable title and transfer fees Plaintiff as part of the transaction to obtain her replacement vehicle. Assuming for the sake of argument that PUIC included $196.00 for such fees as part of the "sales tax reimbursement" payment, as it now asserts, PUIC underpaid the applicable title and transfer fees by $25.00 ($221.00 - $196.00 = $25.00).

80.     On information and belief, as a result of these two underpayments, PUIC paid Plaintiff $621.55 when, in fact, it should have paid her $697.59 for applicable title and transfer fees and applicable taxes. PUIC thus underpaid the Claim by $76.04.

81.     PUIC breached its contract with Plaintiff, and was unjustly enriched, by not

including the full amount of the applicable title and transfer fees and sales taxes when making its payment for Plaintiff's total loss Claim. Plaintiff has been damaged in the amount of $76.04 by PUIC's failure to pay those costs in full.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this action pursuant to 735 ILCS 5/2-801, individually and on behalf of all other persons similarly situated individuals and entities defined as follows:

> All persons in Illinois who insured a vehicle for physical damage coverage under an automobile insurance policy issued by Progressive Universal Insurance Company who suffered a total loss of a covered vehicle at any time during the applicable period of limitations prior to the filing of this lawsuit, who were not paid the full amount of the title and transfer fees and applicable sales taxes as part of their total loss claim.

Excluded from the Class are the Defendant and its employees and agents and members of the Judiciary. Plaintiff reserves the right to amend the Class definition upon completion of class discovery when the contours and the parameters of class become apparent.

83.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

84.     The Class meets the criteria for certification under 735 ILCS 5/2-801 in that:

(a)     **Numerosity**: The members of the Class are so numerous that their individual joinder herein is impracticable. While Plaintiff is informed and believes that the Class consists of more than forty (40) and likely several thousand persons, the precise number of Class members is presently unknown to Plaintiff, but may be ascertained from PUIC's books and records. The members of the Class are easily ascertainable and readily identifiable from information and records in PUIC's possession, control, or custody. Upon information and

belief, PUIC maintains records of all total loss claims made by its insureds and paid by PUIC. These records include a form of claim settlement explanation or claim log entries or other documentation that itemize what categories and amounts of costs were and were not paid. These categories include title fees and license transfer fees and applicable taxes. Members of the Class may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

(b)     **Commonality and Predominance**: This action involves common questions of law and fact applicable to each class member that predominate over questions that affect only individual class members. Thus, proof of a common set of facts will establish the right of each class member to recover. Questions of law and fact common to the claims of the Plaintiff and members of the putative Class, which predominate over any individual issues, include, among others:

(i)     whether PUIC's contractual agreement obligated it to pay the full amount of title and transfer fees and applicable taxes when making a payment for total loss;

(ii)     whether PUIC breached its contracts with Plaintiff and other Class members by failing to pay the full amount of title and transfer fees and applicable taxes when making a payment for total loss;

(iii)     whether PUIC was unjustly enriched by failing to pay the full amount of title and transfer fees and applicable taxes when making a payment for total loss; and

(iv)     the amount and nature of relief to be awarded to Plaintiff and the

other Class members.

(c)     **Typicality**:  Plaintiff's claims are typical of the claims of the proposed Class.  All claims are based on the same legal and factual issues. Plaintiff's claims are typical of the Class' claims because, among other things, all members of the Class were comparably injured through PUIC's uniform misconduct described above. Plaintiff and the other Class members were all similarly affected by PUIC's failure to pay the full amount of title and transfer fees and applicable taxes when making a payment for total loss. Plaintiff's claims are based on the same legal theories as those of the other Class members. Plaintiff and the other Class members similarly sustained damages as a direct and proximate result of the same wrongful practices in which PUIC engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members. In addition, there are no defenses available to PUIC that are unique to Plaintiff or to any particular members of the Class. At its core, this is a claim involving identical issues on identical (in all relevant respects) contracts across the Class. There are no material differences among Illinois laws pertaining to the simple issues presented here. PUIC's liability can be proven with common proof.

(d)     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and Plaintiff has retained counsel competent and experienced in complex class actions. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Defendant has no defenses unique to Plaintiff. The questions of law and fact common to the proposed class members predominate over any questions affecting only individual Class members. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the

17

Class members and will diligently discharge those duties by vigorously seeking relief and recovery for the Class. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

85.     In addition, a class action is an appropriate and superior method for adjudicating this controversy fairly and efficiently. The interest of the individual Class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

(a)     **Insufficiency of Separate Actions:** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual policyholders, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for PUIC.

(b)     **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against PUIC, so it would be impracticable for the Class members to individually seek redress for PUIC's wrongful conduct. Even if the Class members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSE OF ACTION

### COUNT I
### BREACH OF CONTRACT

86.     Plaintiff incorporates paragraphs 1 through 85 above, as if fully stated herein.

87.     Plaintiff asserts a breach of contract claim against PUIC, on behalf of Plaintiff, and the Class.

88.     Plaintiff, and each member of the Class, were parties to an insurance contract with PUIC.

89.     Plaintiff, and each member of the Class, were insured by a policy of insurance issued by PUIC, as described herein.

90.     Plaintiff, and each member of the Class, complied with the conditions precedent in their insurance contracts.

91.     The pertinent insurance policies are form contracts containing certain uniform provisions.

92.     The interpretation of all such insurance contracts is governed by common law, and the law of Illinois is the same for each member of the Class with regard to the interpretation of the contractual provisions at issue in this lawsuit.

93.     Plaintiff and each of the other Class members made claims under their insurance contracts, which PUIC determined to be total losses under the insurance contracts, and additionally determined to be covered claims.

94.     PUIC, by paying on the total loss claims, determined that Plaintiff and each Class member complied with the terms of their insurance contracts and fulfilled all of their duties

19

that the insurance contracts imposed for them to be paid on their total loss.

95.     Upon the total loss of their insured vehicles, Plaintiff and each of the other Class members were each owed the ACV of their vehicles, or cost to replace the damaged vehicle, along with the full amount of title and transfer fees and applicable taxes, so that they could "replace" their totaled vehicle.

96.     PUIC failed to pay the requisite full amount of title and transfer fees and applicable taxes to Plaintiff and the other Class members on their total loss claims.

97.     PUIC's failure to pay the requisite title and transfer fees and applicable taxes in full constitutes a material breach of its contracts with Plaintiff and each of the other Class members.

98.     As a result of these contractual breaches, Plaintiff and each of the other Class members have been damaged, and are entitled to sums representing the benefits owed for title and transfer fees and applicable taxes, as well as costs, pre-judgment and post-judgment interest, and other relief as appropriate.

## COUNT II
## UNJUST ENRICHMENT (IN THE ALTERNATIVE)

99.     Plaintiff incorporates paragraphs 1 through 85 above, as if fully stated herein.

100.    Should this Court find that no contract or contractual provision expressly governs the claims arising from the allegations of this Complaint, Plaintiff asserts that PUIC knowingly retained benefits from Plaintiff and the other members of the Class under circumstances that render PUIC's retention of such benefits unfair, improper and unjust.

101.    An action for unjust enrichment is founded upon the equitable principle that no one ought unjustly to enrich himself at the expense of another.

102.    PUIC unfairly retained and unjustly benefitted from financial gain achieved by

failing to pay full amount of title and transfer fees and applicable taxes involved with the purchase of a replacement vehicle, to Plaintiff and the other members of the Class.

103. A claim for unjust enrichment is maintainable in all cases where one has received money under such circumstances that, in equity and good conscience, he ought not to retain it, and it belongs to another.

104. As a direct and proximate result of PUIC's actions, PUIC has been unjustly enriched.

105. PUIC's retention of the financial gain it achieved by failing to pay the full amount of title and transfer fees and applicable taxes involved with the purchase of a replacement vehicle is unjust and inequitable. Plaintiff and the Class thus seek disgorgement of all such amounts unjustly retained, as well as costs, pre-judgment and post-judgment interest, and other relief as appropriate.

**WHEREFORE**, Plaintiff Shauna Connors, individually and on behalf of all others similarly situated, prays that judgment be entered in their favor and against Defendant, Progressive Universal Insurance Company, as follows:

A. That the Court adjudge, decree and certify that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as counsel for the Class;

B. That the Court grant judgment in favor of Plaintiff and the Class, and against PUIC;

C. That the Court award compensatory damages for Plaintiff and the other Class members against PUIC;

D. Alternatively, that the Court order restitution for disgorgement of monies

21

wrongfully retained by PUIC;

    E.      That the Court award prejudgment interest on any damage amounts awarded;

    F.      That the Court award post-judgment interest on any judgment entered;

    G.      That the Court award reasonable attorneys' fees, expenses and litigation costs as appropriate pursuant to applicable law; and

    H.      That the Court grant such further relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: October 12, 2020

                                      Respectfully submitted,

                                      SHAUNA CONNORS, individually, and on behalf of all others similarly situated,

                                      By:  /s/ Jeffrey A. Berman_____
                                            Counsel for the Plaintiff and the Class

Jeffrey A. Berman – ARDC #6196251
Patrick J. Solberg  - ARDC #6243928
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847/368-1500
Email:  jberman@andersonwanca.com
Email:  psolberg@andersonwanca.com

Counsel for the Plaintiff and the Class

22

**EXHIBIT A**

PROGRESSIVE
P.O. BOX 31264
TAMPA, FL 33633-0503



743636 20596 1 AB 0.419  PMIDS01O 058 020596

SHAUNA CONNORS
901 GUERIN RD
LIBERTYVILLE, IL 60048

*

0015U

PMIDS010 020596 003 * 003 001 < >

**Policy Number: 915001009**

Underwritten by:
Progressive Universal Insurance Co
Policyholder:
Shauna Connors
Page 2 of 2
April 21, 2020

## Coverage information

| | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability | $25,000 each person/$50,000 each accident | |
| Property Damage Liability | $20,000 each accident | |
| Collision | - | $500 deductible |
| Comprehensive | - | $500 deductible |

PMIDS01O 020596 003 * 003 003 < >

Progressive
PO Box 31260
Tampa, FL 33631
NAIC Company Code: 21727


DIRECT Auto

**Policy Number: 915001009**
Underwritten by:
Progressive Universal Insurance Co
Policyholder:
Shauna Connors
Page 1 of 2
April 21, 2020

**Customer Service**
**1-800-776-4737**
24 hours a day, 7 days a week

# Verification of Insurance for

## Shauna Connors

This verification of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policies listed herein. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this verification of insurance may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of the policies.

Please accept this letter as verification of insurance for this policy.

## Policy and driver information

| | |
|---|---|
| Policy number: | 915001009 |
| Policy state: | Illinois |
| Policy period: | Aug 29, 2012 - Feb 28, 2013 |
| There was no lapse in coverage during this policy period. | |
| Effective date: | Apr 21, 2020 |
| Drivers: Shauna Connors | Insured Driver |
| Address: | 901 Gurin Rd |
| | Libertyville, IL 60048 |

## Vehicle information

| | |
|---|---|
| Vehicle: | 2010 Jeep Liberty |
| Vehicle identification number: | 1J4GL48KX6W124201 |
| Lienholder: | Baxter Credit Union (loan) |
| | PO Box 924603 |
| | Fort Worth, Texas 76124 |


Continued

**Policy Number: 915001009**

Underwritten by:
Progressive Universal Insurance Co
Policyholder:
Shauna Connors
Page 2  of 2
April 21, 2020

## Coverage information

| | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability | $25,000 each person/$50,000 each accident | |
| Property Damage Liability | $20,000 each accident | |
| Collision | - | $500 deductible |
| Comprehensive | - | $500 deductible |



PMIDS01O 020596  003  003  002  *  003  002

Form VOI (07/13)

Progressive
PO Box 31260
Tampa, FL 33631
NAIC Company Code: 21727



**Policy Number: 915001009**
Underwritten by:
Progressive Universal Insurance Co
Policyholder:
Shauna Connors
Page 1 of 2
April 21, 2020

**Customer Service**
**1-800-776-4737**
24 hours a day, 7 days a week

# Verification of Insurance for

### Shauna Connors

This verification of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policies listed herein. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this verification of insurance may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of the policies.

Please accept this letter as verification of insurance for this policy.

## Policy and driver information

| | |
|---|---|
| Policy number: | 915001009 |
| Policy state: | Illinois |
| Policy period: | May 19, 2018 - Aug 10, 2018 |
| There was no lapse in coverage during this policy period. | |
| Effective date: | May 19, 2018 |
| Drivers: Shauna Connors | Insured Driver |
| Address: | 901 Gurin Rd |
| | Libertyville, IL 60048 |

## Vehicle information

| | |
|---|---|
| Vehicle: | 2010 Jeep Liberty |
| Vehicle identification number: | 1J4PN2GK0AW120330 |
| Lienholder: | Connexus Credit Union (Loan) |
| | PO Box 8026 |
| | Wausau, Wisconsin 54402 |


Continued

CONTENTS

**INSURING AGREEMENT** ............................................................. 1

**GENERAL DEFINITIONS** .......................................................... 1

**PART I—LIABILITY TO OTHERS**
    Insuring Agreement ................................................................3
    Additional Definitions............................................................3
    Additional Payments.............................................................3
    Exclusions ..............................................................................4
    Limits of Liability..................................................................5
    Financial Responsibility Laws ...........................................6
    Other Insurance ...................................................................6
    Out-of-State Coverage ........................................................6

**PART II—MEDICAL PAYMENTS COVERAGE**
    Insuring Agreement ..............................................................7
    Additional Definitions............................................................7
    Exclusions ..............................................................................7
    Limits of Liability..................................................................9
    Unreasonable or Unnecessary Medical Expenses ..........9
    Other Insurance ...................................................................9

**PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE**
    Insuring Agreement—Uninsured/Underinsured Motorist
      Bodily Injury Coverage ..................................................10
    Insuring Agreement—Uninsured Motorist
      Property Damage Coverage ..........................................10
    Notice and Consent Requirements .................................10
    Additional Definitions..........................................................11
    Exclusions ..............................................................................12
    Limits of Liability..................................................................13
    Other Insurance ...................................................................14
    Arbitration.............................................................................15

**PART IV—DAMAGE TO A VEHICLE**
    Insuring Agreement—Collision Coverage .......................16
    Insuring Agreement—Comprehensive Coverage ............16
    Insuring Agreement—Additional Custom Parts or
      Equipment Coverage .....................................................17
    Insuring Agreement—Rental Reimbursement Coverage.....17
    Insuring Agreement—Limited Loan/Lease Payoff Coverage ...17
    Insuring Agreement—Pet Injury Coverage .....................18
    Additional Definitions..........................................................18
    Exclusions ..............................................................................19
    Limits of Liability..................................................................20
    Payment of Loss...................................................................22

No Benefit to Bailee .........................................................22
Loss Payable Clause.........................................................22
Other Sources of Recovery...............................................22
Appraisal ...........................................................................23

**PART V—ROADSIDE ASSISTANCE COVERAGE**
Insuring Agreement ...........................................................23
Additional Definitions.........................................................23
Exclusions .........................................................................24
Unauthorized Service Provider..........................................24
Other Insurance ................................................................24

**PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS**...........................25

**PART VII—GENERAL PROVISIONS**
Policy Period and Territory.................................................25
Changes.............................................................................25
Duty to Report Changes ....................................................26
Settlement of Claims .........................................................26
Terms of Policy Conformed to Statutes .............................27
Transfer of Interest ...........................................................27
Fraud or Misrepresentation ...............................................27
Payment of Premium and Fees .........................................28
Cancellation ......................................................................28
Cancellation Refund..........................................................30
Nonrenewal .......................................................................30
Automatic Termination.......................................................30
Legal Action Against Us.....................................................30
Our Rights to Recover Payment.........................................31
Joint and Individual Interests.............................................32
Bankruptcy ........................................................................32

**CONSUMER HOTLINE**........................................................................32

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.

### CONSUMER HOTLINE

**We** have established a Consumer Hotline for your use. If **we** may provide any assistance, call us toll-free at 1-800-888-7764 or write to **us** at P.O. Box 6949, Cleveland, Ohio 44101-9871. You may also contact the Illinois Department of Insurance, Consumer Division or Public Services Section, Springfield, Illinois 62767.

### ILLINOIS AUTO POLICY

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

### GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.
   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.
2. "**Auto**" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
   However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.
3. "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
4. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
5. "**Child restraint system**" means any device designed to restrain, seat or position children that meets the standards of the United States Department of Transportation.
6. "**Covered auto**" means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.

7. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

8. "**Occupying**" means in, on, entering or exiting.

9. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

10. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:

    a. listed in the "Drivers and household residents" section on the **declarations page**; and

    b. not designated as either an "Excluded" or a "List Only" driver.

11. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

12. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

13. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

14. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:

    a. for commercial purposes;

    b. as an office, store, or for display purposes; or

    c. as a passenger conveyance.

15. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software, website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

16. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

However, **we** may not assert rights of recovery against the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**, if the person seeking coverage under Part III - Uninsured/Underinsured Motorist Coverage provides **us** with written notice at least 30 days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**, and if **we** do not elect to pay to, or on behalf of, that person an amount equal to the amount offered in full settlement by, or on behalf of, the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

Any refund due will be computed on a daily pro rata basis.

## NONRENEWAL

If **we** do not offer to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

After this policy has been in effect or renewed for five or more years, **we** shall not exercise **our** right of nonrenewal unless:
1. there exists one or more of the grounds for cancellation, as set forth in the "CANCELLATION" provision above as acceptable reasons for cancelling a policy after being in effect for more than 60 days; or
2. **we** mail notice of nonrenewal to **you** at least 60 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** offer to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**.

17. "**You**" and "**your**" mean:
   a. a person shown as a named insured on the **declarations page**; and
   b. the spouse of a named insured if residing in the same household at the time of the loss.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I. If a lawsuit is brought against an **insured person** seeking both compensatory and punitive or exemplary damages with respect to a claim for acts or alleged acts covered under this Part I, **we** will provide a defense to such lawsuit without liability for any punitive or exemplary damages.

### ADDITIONAL DEFINITIONS

When used in this Part I:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
   b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
   d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:
1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and

5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity.**
   This exclusion does not apply to shared-expense car pools;

2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident;**

3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business.** This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto;**

5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

9. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;

10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;

6. an insured person made a false or fraudulent claim, or a material misrepresentation in the submission of a claim, or knowingly aided or abetted another in the presentation of such a claim;

7. the named insured, or any operator who either resides in the same household or customarily operates a **covered auto:**
   a. has had a driver's license under suspension or revocation within the 12 months prior to the notice of cancellation;
   b. is or becomes subject to epilepsy or heart attacks, and such individual does not produce a certificate from a physician testifying to the person's unqualified ability to operate a motor vehicle safely;
   c. has:
      (i) an accident record;
      (ii) a criminal or traffic conviction record; or
      (iii) a physical or mental condition which is such that the person's operation of a motor vehicle might endanger the public safety;
   d. has been addicted to the use of narcotics or other drugs within the 36 months prior to the notice of cancellation;
   e. has, during the 36 months immediately preceding the notice of cancellation, been convicted of, or forfeited bail for:
      (i) any felony;
      (ii) criminal negligence resulting in death;
      (iii) homicide or assault arising out of the operation of a motor vehicle;
      (iv) operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;
      (v) being intoxicated while in, or about, an **auto**, or while having custody of an **auto;**
      (vi) leaving the scene of an **accident** without stopping to report;
      (vii) theft or unlawful taking of a motor vehicle; or
      (viii) making false statements in an application for an operator's or chauffeur's license; or
   f. has, within the 12 months immediately preceding the notice of cancellation, been convicted of, or forfeited bail for, three or more violations of:
      (i) any law, ordinance or regulation limiting the speed of motor vehicles; or
      (ii) any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses;

8. the **covered auto** is:
   a. so mechanically defective that its operation might endanger public safety;
   b. used in carrying passengers for hire or compensation. However, this shall not apply to a shared-expense car pool;
   c. used in the business of transportation of flammables or explosives;
   d. an authorized emergency vehicle;
   e. changed in shape or condition during the policy period so as to increase the risk substantially;
   f. subject to an inspection by law and has not been inspected or, if inspected, has failed to qualify; or

9. any other reason permitted by statute.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if the policy is cancelled for nonpayment of premium.

**We** will give at least 30 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 60 days of the initial policy period.

After this policy is in effect for more than 60 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement, continuation, change or renewal of the policy;
3. **your** place of residence or the state of registration or license of a **covered auto** is changed to a state or country in which **we** do not accept applications for the insurance provided by this policy;
4. an insured person violated any of the terms or conditions of the policy;
5. the named insured failed to fully disclose motor vehicle accidents and moving traffic violations for the preceding 36 months;

11. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;
12. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;
13. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
14. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;
15. punitive or exemplary damages; or
16. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

If a court with proper jurisdiction determines an exclusion is partly or wholly invalid or unenforceable because it does not permit this policy to satisfy the minimum requirements of the Illinois Motor Vehicle Safety and Family Financial Responsibility Law, the exclusion will only apply to the extent that the limits of liability of this policy exceed the minimum limits of liability required by law.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III—Uninsured/Underinsured Motorist Coverage. However, this provision shall not reduce coverage under this Part I to an amount less than the minimum limit mandated by the Illinois Motor Vehicle Safety and Family Financial Responsibility Law.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

**FINANCIAL RESPONSIBILITY LAWS**

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

**OTHER INSURANCE**

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.

**OUT-OF-STATE COVERAGE**

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:

**TERMS OF POLICY CONFORMED TO STATUTES**

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

**TRANSFER OF INTEREST**

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

**FRAUD OR MISREPRESENTATION**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy, after inception will be made in reliance upon information **you** provide, If **you**:

1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** will not void this policy due to a misrepresentation of a material fact or circumstance in the application after this policy has been in effect for one year or one policy period, whichever is less.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:

1. the number, type or use classification of **covered autos**;
2. the persons who regularly operate a **covered auto**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered auto**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:

1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident**.

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the limits of liability under this policy.

## PART II—MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:

1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:

1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

### ADDITIONAL DEFINITIONS

When used in this Part II:

1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**:
      (i) while **occupying** an **auto**; or
      (ii) when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and
   b. any other person while **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**.
2. "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics, and prosthetic devices.
3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.

Coverage under this Part II will not apply to **bodily injury**:

1. sustained by any person while **occupying a covered auto** while it is being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or

c. for **ride-sharing activity**.

This exclusion does not apply to shared-expense car pools;

2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

3. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or race-course;

4. due to a nuclear reaction or radiation;

5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

6. for which the United States Government is liable under the Federal Tort Claims Act;

7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;

8. if workers' compensation benefits are available for the **bodily injury**;

9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you**, a **relative**, or a **rated resident,** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts; or

14. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:

1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;
12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a rela-tive, or the operator of a **covered disabled auto**;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with a **personal vehicle shar-ing program**; or
16. a trailer.

### UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

### OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized ser-vice provider will be excess over any other collectible insurance or towing protection coverage.

### LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III—Uninsured/Underinsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

### UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unrea-sonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services** **we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

### OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person** occupy-ing a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**.

## PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE

### INSURING AGREEMENT—UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle** or an **underinsured motor vehicle**.

**We** will pay under this coverage only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements. However, this shall not apply if **we** and the **insured person** agree, without arbitration, that the **insured person** has suffered **bodily injury** or death, and also agree on the amount of damages within the Limit of Liability that the **insured person** is legally entitled to collect under this coverage.

### INSURING AGREEMENT—UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **property damage**:

1. caused by an **accident**; and
2. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

**We** will also pay for replacement of a **child restraint system** that was in use by a child in a **covered auto** at the time of an accident for which this coverage applies due to the liability of the owner or operator of an **uninsured motor vehicle**.

### NOTICE AND CONSENT REQUIREMENTS

An **insured person** must notify **us** in writing at least 30 days before entering into any settlement with the **owner** or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**, or any liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**. If **we** do this, the **insured person** agrees to assign to **us** all their rights against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**, to the extent of **our** payment.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

### APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:

1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

b. If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

c. No deductible shall apply to this coverage.

6. Any amount paid or payable to a person under this Part IV shall be reduced by any amount paid for **property damage**, as defined in Part III – Uninsured/Underinsured Motorist Coverage, under Part III's Uninsured Motorist Property Damage Coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:

1. pay for the loss in money; or
2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:

1. where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2. where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown

## ADDITIONAL DEFINITIONS

When used in this Part III:

1. For Uninsured Motorist Bodily Injury Coverage and Uninsured Motorist Property Coverage, "insured person" means:
   a. **You**, a **relative**, or a **rated resident**;
   b. any person **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person **occupying**, but not operating, a **covered auto**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.

2. For Underinsured Motorist Bodily Injury Coverage, "insured person" means:
   a. **you**, a **relative**, or a **rated resident**:
      (i) while **occupying** an **auto**; or
      (ii) when struck by a motor vehicle or a trailer while not **occupying** a self-propelled motorized vehicle;
   b. any person **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**; and
   c. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a. or b. above.

3. "**Property damage**" means only physical damage to or destruction of a **covered auto**. "**Property damage**" does not include loss of use of a **covered auto** resulting from its physical damage or destruction.

4. "**Underinsured motor vehicle**" means a land motor vehicle of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured/Underinsured Motorist Bodily Injury Coverage shown on the **declarations page**.
   An "**underinsured motor vehicle**" does not include any vehicle or equipment:
   a. owned by **you** or a **relative** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;
   b. owned by any governmental unit or agency;
   c. operated on rails or crawler treads;
   d. designed mainly for use off public roads, while not on public roads;
   e. while located for use as a residence or premises;
   f. that is a **covered auto**; or
   g. that is an **uninsured motor vehicle**.

5. "**Uninsured motor vehicle**" means a land motor vehicle of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the accident;
   b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;
   c. to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the minimum limit of

liability for bodily injury specified by the financial responsibility law of the state in which the **covered auto** is principally garaged; or

d. that is a hit-and-run vehicle whose owner or operator cannot be identified and which strikes or causes an object to strike:

(i) **you**, a **relative**, or a **rated resident**;

(ii) a vehicle that **you**, a **relative**, or a **rated resident** are **occupying**; or

(iii) a **covered auto**;

provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** other than a **covered vehicle**;

b. owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent;

c. owned by any governmental unit or agency;

d. operated on rails or crawler treads;

e. designed mainly for use off public roads, while not on public roads;

f. while located for use as a residence or premises; or

g. that is an **underinsured motor vehicle**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:

1. to **bodily injury** sustained by any person while using or **occupying**:

a. a **covered auto** while being used:

(i) to carry persons or property for compensation or a fee;

(ii) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or

(iii) for **ride-sharing activity**.

This exclusion does not apply to shared-expense car pools; or

b. a motor vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III;

2. to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

3. directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:

a. workers' compensation law; or

b. disability benefits law;

4. to any punitive or exemplary damages;

5. to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent; or

2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:

a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.

b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.

c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.

d. In determining the amount necessary to repair damaged property to its preloss condition, the amount to be paid by **us**:

(i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

(ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:

(a) original manufacturer parts or equipment; and

(b) nonoriginal manufacturer parts or equipment.

e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

f. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

(i) batteries;

(ii) tires;

(iii) engines and transmissions, if the engine has greater than 80,000 miles; and

(iv) any other **mechanical parts** that are nonfunctioning or inoperative.

**We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3. No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4. Duplicate recovery for the same elements of damages is not permitted.

5. The following additional limits of liability apply to Pet Injury coverage:

a. The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

8.  to any vehicle that is due and confined to:
    a.  wear and tear;
    b.  freezing;
    c.  mechanical, electrical or electronic breakdown or failure; or
    d.  road damage to tires.
    This exclusion does not apply if the damage results from the theft of a vehicle;
9.  to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
    a.  tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
    b.  any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
    c.  any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
    d.  CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;
10.  to any vehicle for diminution of value;
11.  to any vehicle caused directly or indirectly by:
    a.  war (declared or undeclared) or civil war;
    b.  warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c.  insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts; or
12.  to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

1.  The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
    a.  the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
    b.  the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
    c.  the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
    d.  the Stated Amount shown on the **declarations page** for that **covered auto**.
    However, the most **we** will pay for loss to:
    a.  **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.
    b.  a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.

6.  to **bodily injury** arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

Coverage under this Part III will not apply to **property damage**:
1.  sustained while a **covered auto** is being used:
    a.  to carry persons or property for compensation or a fee; or
    b.  for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food.
    This exclusion does not apply to shared-expense car pools;
2.  resulting from, or sustained during practice or preparation for:
    a.  any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
    b.  any driving activity conducted on a permanent or temporary racetrack or racecourse;
3.  to a **covered auto** for which insurance:
    a.  is afforded under a nuclear energy liability insurance contract; or
    b.  would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
4.  to a **trailer**;
5.  if there is no actual physical contact between the **uninsured motor vehicle** and the **covered auto**; or
6.  if the owner or operator of the at-fault **uninsured motor vehicle** cannot be identified.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of the number of:
1.  claims made;
2.  **covered autos**;
3.  **insured persons**;
4.  lawsuits brought;
5.  vehicles involved in the accident; or
6.  premiums paid.

If **your declarations page** shows a split limit:
1.  the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
2.  subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all **bodily injury** damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

The limits of liability under this Part III for **bodily injury** will be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2. paid under Part I—Liability To Others; and
3. paid or payable because of **bodily injury** under any workers' compensation law.

**We** will not pay under this Part III any expenses paid or payable under Part II—Medical Payments Coverage.

The limit of liability under this Part III for **property damage** to a **covered auto** is the lowest of:
1. the actual cash value of the **covered auto** at the time of the **accident**;
2. the amount necessary to replace the **covered auto**;
3. the amount necessary to repair the **covered auto** to its pre-loss condition; or
4. the limit of liability shown on the **declarations page** for Uninsured Motorist Property Damage for the **covered auto**.

The limit of liability under this Part III for **property damage** will be reduced by all sums paid because of **property damage**:
1. by or on behalf of any persons or organizations who may be legally responsible; and
2. under Part IV—Damage To A Vehicle.

Payments for **property damage** under this Part III are subject to the following provisions:
1. any amount payable shall be subject to the deductible shown on the **declarations page**; and
2. no more than one deductible shall be applied to any one **accident**.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. If this policy and any other policy providing similar insurance apply to the same **accident**, the maximum limit of liability under all the policies shall be the highest limit of liability under any one policy. However, any insurance **we** provide with respect to a vehicle that is not a **covered auto** will be excess over any other uninsured or underinsured motorist coverage.

3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.
5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.**

Coverage under this Part IV will not apply for loss:
1. to any vehicle while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected. However, this exclusion does not apply to an innocent co-insured's legal interest in the **covered auto** if:
   a. the innocent co-insured did not cooperate in or contribute to the creation of the loss;
   b. the loss arose out of a pattern of criminal domestic violence; and
   c. the perpetrator of the loss is criminally prosecuted for the act causing the loss;
6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;
7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you**, any **relative**, or any **rated resident** engaged in illegal activities;

amounts otherwise payable under this Part IV, the difference between:

1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1. up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or
2. a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:

1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered as standard or optional equipment by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
   a. are permanently installed or attached; and
   b. alter the appearance or performance of the **auto**.

18

## ARBITRATION

If **we** and an **insured person** cannot agree on:

1. the legal liability of the operator or owner of an **uninsured motor vehicle** or an **underinsured motor vehicle**; or
2. the amount of the damages sustained by the **insured person**;

this will be determined by arbitration if **we** and the **insured person** mutually agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred.

In the event of arbitration, each party will select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within 45 days, then either party may request that the arbitration be submitted to the American Arbitration Association, or on joint application by the **insured person** and **us**, the third arbitrator may be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally. In the event the arbitrators award reasonable arbitration costs, fees or expenses, **we** will pay only that portion of such awarded costs, fees or expenses as is necessary to prevent the amount available under this policy for payment of compensatory damages awarded by the arbitrators from being reduced to an amount less than the minimum amount required under the Illinois Vehicle Code and the Illinois Insurance Code, as amended.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Rules of procedure and evidence will apply according to Illinois law.

A decision agreed to by two of the arbitrators will be binding with respect to a determination of:

1. the legal liability of the operator or owner of an **uninsured motor vehicle** or an **underinsured motor vehicle**; and
2. the amount of the damages sustained by the **insured person**.

The arbitrators will have no authority to award an amount in excess of the limit of liability. The decision of the arbitrators is binding only if the amount of the award does not exceed $75,000 for **bodily injury** or death of any one person, $150,000 for **bodily injury** or death of two or more persons in any one motor vehicle accident, or the corresponding policy limits for **bodily injury** or death, whichever is less. If the award of the arbitrators for damages caused by an **uninsured motor vehicle** or an **underinsured motor vehicle** exceeds the applicable limit set forth in this paragraph, either party may demand the right to a trial. This demand must be made in writing within 60 days of the arbitrators' decision. If the demand is not made within 60 days, the amount of damages agreed to by the arbitrators will be binding.

15

### PART IV—DAMAGE TO A VEHICLE

**INSURING AGREEMENT—COLLISION COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision** with another object or from overturning.

In addition, **we** will pay the reasonable cost to replace any **child restraint system** damaged in an accident to which this coverage applies.

**INSURING AGREEMENT—COMPREHENSIVE COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:
1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

In addition, **we** will pay for:
1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2. loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen. A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:
1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

**INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE**

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

**INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE**

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1. when the **covered auto** cannot be driven due to a loss; or
2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;
and ending the earliest of:
1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

**INSURING AGREEMENT—LIMITED LOAN/LEASE PAYOFF COVERAGE**

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any




PROGRESSIVE
DIRECT Auto

# ILLINOIS
## AUTO POLICY

Form 9611D IL (05/15)
version 2.0



9611D IL 0515

PROGRESSIVE
DIRECT Auto



9611D IL 0515

**EXHIBIT B**

# Vehicle Valuation Report

Prepared For Progressive Group of Insurance Companies   (800) 321-9843


mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 18-1144544-01 | | COLLISION | SHAUNA CONNORS 901 GURIN RD LIBERTYVILLE, IL 60048 +1-847-6873087 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 07/30/2018 | 07/30/2018 | 08/07/2018 | 1008043127 | 1 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2010 | Jeep | Liberty Sport 4 Door Utility 106" WB 3.7L 6 Cyl Gas A 4WD | IL 60048 | 150,393 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| | X205708, Illinois | 1J4PN2GK0AW120330 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---|
| Base Value = | $7,136.10 |
| Condition - | $327.67 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $6,808.43 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---|
| Deductible - | $500.00 |
| Settlement Value = | $6,308.43 |

# Settlement Value:
# $6,308.43

Mitchell **WorkCenter** ™
Total Loss
© 2018 Mitchell International, Inc. All Rights Reserved.

# Loss Vehicle Detail

Loss vehicle: 2010 Jeep Liberty | Sport 4 Door Utility 106" WB | 3.7L 6 Cyl Gas A 4WD

## Standard Equipment

### Exterior

| | |
|---|---|
| 16" x 7.0" aluminum wheels | Automatic halogen headlamps w/time-off delay |
| Black door handles | Black license plate brow |
| Black roof molding | Body color fascias |
| Body color fender flares | Body color grille |
| Bodyside molded-in-color moldings | Front license plate bracket |
| Heated fold-away pwr mirrors | P225/75R16 all-season BSW tires |
| Rear window wiper/washer | Tinted windshield glass |
| Variable intermittent windshield wipers | |

### Interior

| | |
|---|---|
| "Flipper" liftgate glass | (6) speakers |
| 12-volt auxiliary pwr outlet | 60/40 folding split-recline seat |
| Active front seat head restraints | Air conditioning |
| Air filtering | Audio input jack |
| Cargo compartment lamp | Carpeted floor covering |
| Courtesy lamps | Front passenger fold-flat-forward seat |
| Full length floor console | Illuminated entry |
| Illuminated visor vanity mirrors | Low Tire Pressure Warning |
| Luxury front & rear floor mats | Map/reading lamps |
| Media center 130 -inc: AM/FM stereo, CD player, MP3 playback, auxiliary audio input | Premium cloth front bucket seats |
| Pwr accessory delay | Pwr windows w/driver 1-touch |
| Rear dome lamp | Rear window defroster |
| Remote keyless entry | Removable short-mast antenna |
| Reversible/waterproof cargo storage | Sentry key theft-deterrent system |
| Sirius satellite radio w/1-year subscription | Speed sensitive pwr locks |
| Stain & odor resistant anti-static seat fabric | Tachometer |
| Tilt steering wheel | |

### Mechanical

| | |
|---|---|
| 140-amp alternator | 3.73 axle ratio |
| 600-amp maintenance free battery | Command-Trac II part-time 4WD system |
| Compact spare tire | Corporate 8.25 solid rear axle |
| Dana 30/186mm front axle | Hill descent control |

| | |
|---|---|
| Hill start assist | Pwr rack & pinion steering |
| Tip start system | |

## Safety

| | |
|---|---|
| All speed traction control | Brake assist |
| Child safety rear door locks | Driver & front passenger advanced multi-stage airbags |
| Dual-note horn | Electronic roll mitigation |
| Electronic stability program | Enhanced accident response system |
| LATCH-ready child seat anchor system | Occupant classification system |
| Pwr 4-wheel anti-lock disc brakes | Supplemental front & rear side curtain air bags |

## Packages

POPULAR EQUIPMENT GROUP

-inc: cargo compartment cover, deep tint sunscreen glass, fog lamps, P225/75R16 all-season OWL tires, side roof rails, speed control, temperature/compass indicator, security alarm

TRAILER TOW CLASS III GROUP

-inc: 7-pin wiring harness, 7 to 4-pin wiring adaptor, class III receiver hitch, full-size spare tire w/black steel wheel, HD engine cooling, pwr steering cooler, trailer sway control, trailer tow group

## Optional Equipment

FULL SIZE SPARE TIRE

\*DIO/PIO =   Dealer/Port Installed Options

# Loss Vehicle Base Value

Loss vehicle:  2010 Jeep Liberty |  Sport 4 Door Utility 106" WB | 3.7L 6 Cyl Gas A 4WD

## Comparable Vehicle Information

Search Radius used for this valuation: 75 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 103,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 101,080 | 60020 | 13 miles | $7,950.00 List Price | $6,514.64 |
| 2 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 127,365 | 60120 | 23 miles | $8,999.00 List Price | $7,901.54 |
| 3 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 144,558 | 60409 | 51 miles | $6,691.00 List Price | $6,501.45 |
| 4 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 111,823 | 53186 | 53 miles | $8,950.00 List Price | $7,684.20 |
| 5 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 98,737 | 61107 | 54 miles | $8,992.00 List Price | $6,408.10 |
| 6 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 94,998 | 53549 | 64 miles | $10,298.00 List Price | $7,769.69 |
| 7 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 112,178 | 46410 | 64 miles | $9,090.00 List Price | $7,478.16 |
| 8 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 92,214 | 46342 | 64 miles | $8,995.00 List Price | $6,746.23 |
| 9 | 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7NORMAL GAS A 4WD | 94,589 | 46304 | 66 miles | $9,518.00 List Price | $7,220.88 |

**Base Value:** **$7,136.10**

## Loss Vehicle Adjustments

Loss vehicle: 2010 Jeep Liberty | Sport 4 Door Utility 106" WB | 3.7L 6 Cyl Gas A 4WD

## Condition Adjustments

Condition Adjustment: -$327.67          Overall Condition: 2.79-Good          Typical Vehicle Condition: 3.00

| Category | Condition | Condition $ | Comments |
|---|---|---|---|
| Interior | | | |
| GLASS | 3 Good | $0.00 | no damage |
| DOORS/INTERIOR PANELS | 3 Good | $0.00 | some permanent marks/soils/stains |
| HEADLINER | 3 Good | $0.00 | no damage |
| DASH/CONSOLE | 3 Good | $0.00 | some permanent marks |
| SEATS | 3 Good | $0.00 | moderate wear |
| CARPET | 3 Good | $0.00 | moderate wear |
| Exterior | | | |
| PAINT | 3 Good | $0.00 | |
| BODY | 2 Fair | -$327.67 | penetrating rust single panels |
| VINYL/CONVERTIBLE TOP | Typical | $0.00 | |
| TRIM | 3 Good | $0.00 | |
| Mechanical | | | |
| TRANSMISSION | 3 Good | $0.00 | |
| ENGINE | 3 Good | $0.00 | |
| Tire | 3 Good | $0.00 | front 7 rear 5 |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments:

# Comparable Vehicles

Loss vehicle: 2010 Jeep Liberty | Sport 4 Door Utility 106" WB | 3.7L 6 Cyl Gas A 4WD

## 1  2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD

List Price: **$7,950.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GK2AW107224 | P4981 | 07/11/2018 | 60020 | 13 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - CARS.COM

4 WHEELS OF FOX LAKE

45 US-12

FOX LAKE IL 60020

847-973-3300

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$564.00 |
| Mileage | 150,393 | 101,080 | -$1,328.81 |
| Equipment | | | |
|   POPULAR EQUIPMENT GROUP | Yes | No | $295.56 |
|   TRAILER TOW CLASS III GROUP | Yes | No | $161.89 |
| | | Total Adjustments: | -$1,435.36 |
| | | **Adjusted Price:** | **$6,514.64** |

## 2  2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD

List Price: **$8,999.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GK0AW101373 | EYC-101373 | 05/28/2018 | 60120 | 23 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

ELGIN HYUNDAI

881 EAST CHICAGO STREET

ELGIN IL 60120

847-888-8222

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$638.00 |
| Mileage | 150,393 | 127,365 | -$642.72 |
| Equipment | | | |
|   TRAILER TOW CLASS III GROUP | Yes | No | $183.26 |
| | | Total Adjustments: | -$1,097.46 |
| | | **Adjusted Price:** | **$7,901.54** |

Comparable Vehicle Package Details:
POPULAR EQUIPMENT GROUP

### 3    2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD      List Price: $6,691.00

| | | | | |
|---|---|---|---|---|
| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
| 1J4PN2GK9AW149650 | TM1503 | 05/07/2018 | 60409 | 51 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

TRANSIT MOTORS

749 TORRENCE AVENUE

CALUMET CITY IL 60409

708-832-0500

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$475.00 |
| Mileage | 150,393 | 144,558 | -$99.53 |
| Equipment | | | |
|    POPULAR EQUIPMENT GROUP | Yes | No | $248.74 |
|    TRAILER TOW CLASS III GROUP | Yes | No | $136.24 |
| | | Total Adjustments: | -$189.55 |
| | | **Adjusted Price:** | **$6,501.45** |

### 4    2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD      List Price: $8,950.00

| | | | | |
|---|---|---|---|---|
| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
| 1J4PN2GK8AW131396 | 18CB1060B | 08/06/2018 | 53186 | 53 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

BOUCHER CHEVROLET

1421 EAST MORELAND BOULEVARD

WAUKESHA WI 53186

262-347-4107

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$635.00 |
| Mileage | 150,393 | 111,823 | -$1,145.78 |
| Equipment | | | |
|    POPULAR EQUIPMENT GROUP | Yes | No | $332.73 |
|    TRAILER TOW CLASS III GROUP | Yes | No | $182.25 |
| | | Total Adjustments: | -$1,265.80 |
| | | **Adjusted Price:** | **$7,684.20** |

## 5 · 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD · List Price: $8,992.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GK8AW112069 | 39738A | 08/01/2018 | 61107 | 54 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
NAPLETON CADILLAC ROCKFORD
505 N PERRYVILLE RD
ROCKFORD IL 61107
815-552-1411

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$638.00 |
| Mileage | 150,393 | 98,737 | -$1,579.69 |
| Equipment | | | |
| MOPAR EXTERIOR APPEARANCE GROUP | No | Yes | -$366.21 |
| | | Total Adjustments: | -$2,583.90 |
| | | **Adjusted Price:** | **$6,408.10** |

Comparable Vehicle Package Details:
POPULAR EQUIPMENT GROUP

TRAILER TOW CLASS III GROUP  (FULL SIZE SPARE TIRE)

MOPAR EXTERIOR APPEARANCE GROUP

## 6 · 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD · List Price: $10,298.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GK7AW108465 | 12094A | 07/18/2018 | 53549 | 64 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - CARS.COM
GRIFFIN CHRYSLER DODGE JEEP
RAM OF JEFFERSON
1121 S MAIN ST
JEFFERSON WI 53549
920-674-7070

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$731.00 |
| Mileage | 150,393 | 94,998 | -$1,949.28 |
| Equipment | | | |
| TRAILER TOW CLASS III GROUP | Yes | No | $209.69 |
| FULL SIZE SPARE TIRE | TRAILER TOW CLASS III GROUP | Yes | -$57.72 |
| | | Total Adjustments: | -$2,528.31 |
| | | **Adjusted Price:** | **$7,769.69** |

Comparable Vehicle Package Details:
POPULAR EQUIPMENT GROUP

Comparable Vehicle Option Details:
FULL SIZE SPARE TIRE

## 7   2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD     List Price: $9,090.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GKXAW152136 | MK0017 | 06/05/2018 | 46410 | 64 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - CARS.COM

BERMAN'S INFINITI OF
MERRILLVILLE

1794 81ST AVE

MERRILLVILLE IN 46410

219-472-4401

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$645.00 |
| Mileage | 150,393 | 112,178 | -$1,151.94 |
| Equipment | | | |
|    TRAILER TOW CLASS III GROUP | Yes | No | $185.10 |
| | | Total Adjustments: | -$1,611.84 |
| | | **Adjusted Price:** | **$7,478.16** |

Comparable Vehicle Package Details:
POPULAR EQUIPMENT GROUP

## 8   2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD     List Price: $8,995.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GK8AW136176 | | 06/28/2018 | 46342 | 64 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - AUTOTRADER.COM

VILLAGE AUTO MART LLC

820 W OLD RIDGE RD

HOBART IN 46342

219-765-2993

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$638.00 |
| Mileage | 150,393 | 92,214 | -$1,793.94 |
| Equipment | | | |
|    TRAILER TOW CLASS III GROUP | Yes | No | $183.17 |
| | | Total Adjustments: | -$2,248.77 |
| | | **Adjusted Price:** | **$6,746.23** |

Comparable Vehicle Package Details:
POPULAR EQUIPMENT GROUP

**9** 2010 JEEP LIBERTY SPORT 4D SUV 6 3.7 NORMAL GAS A4WD | List Price: **$9,518.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 1J4PN2GK8AW152135 | E8154A | 08/06/2018 | 46304 | 66 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

CONNORS CHRYSLER DODGE JEEP
RAM

701 E PORTER AVE
CHESTERTON IN 46304
219-926-7100

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$675.00 |
| Mileage | 150,393 | 94,589 | -$1,815.94 |
| Equipment | | | |
| TRAILER TOW CLASS III GROUP | Yes | No | $193.82 |
| | | Total Adjustments: | -$2,297.12 |
| | | **Adjusted Price:** | **$7,220.88** |

Comparable Vehicle Package Details:
POPULAR EQUIPMENT GROUP

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2010 Jeep Liberty Sport | 4 Door Utility 106" WB 3.7L 6 Cyl Gas  4WD | $24,865.00 |

## Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

### Step 1 - Locate Comparable Vehicles

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

### Step 2 - Adjust Comparable Vehicles

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

### Step 3 - Calculate Base Vehicle Value

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

### Step 4 - Calculate Loss Vehicle Adjustments

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

### Step 5 - Calculate the Market Value

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

Claim # 18-1144544-01 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 11

**EXHIBIT C**

Progressive
P.O. Box 512926
Los Angeles, CA 90051



Page 1 of 1

CONNEXUS CREDIT UNION
PO BOX 8026
WAUSAU, WI 54402-8026

| ADVICE FOR PAYMENT 2776917059 | | |
|---|---|---|
| **Payee:**<br>CONNEXUS CREDIT UNION | **Payment Date** | 08/21/2018 |
| | **Total Payment Amount** | $6,308.43 |
| | **Total Number of Invoices** | 1 |
| If you have any questions regarding this payment, please call us at 1-800-274-4499. | | |

| Details | | | | | |
|---|---|---|---|---|---|
| **Claim Number:**<br>181144544 | **Name:**<br>CONNORS, SHAUNA | **Date of Loss:**<br>07/30/2018 | **Invoice Number:**<br>49980225 | **Company:**<br>Progressive Universal Insurance Company | |

| Type | Description | *Coverage | Reference | Identifier | Service Dates | Deductible | Payment Amount |
|---|---|---|---|---|---|---|---|
| Total Loss | Progressive Obtains Salvage | COLL | N/A | 10 JEEP LIBERTY 120330 | N/A | $0.00 | $6,308.43 |

| **Total Payment Amount** | $6,308.43 |
|---|---|

**\*Full Description of Coverage:**

COLL       -   Collision

**EXHIBIT D**

Progressive
P.O. Box 512926
Los Angeles, CA 90051



Page 1 of 1

SHAUNA CONNORS
901 GUERIN RD
LIBERTYVILLE, IL 60048-1113

| ADVICE FOR PAYMENT 2023670215 | | |
|---|---|---|
| **Payee:** SHAUNA CONNORS | **Payment Date** | 11/06/2018 |
| | **Total Payment Amount** | $621.55 |
| | **Total Number of Invoices** | 1 |
| If you have any questions regarding this payment, please call us at 1-800-274-4499. | | |

| Details | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Claim Number:** 181144544 | **Name:** CONNORS, SHAUNA | | **Date of Loss:** 07/30/2018 | **Invoice Number:** 52523813 | **Company:** Progressive Universal Insurance Company | | | |
| **Type** | **Description** | **\*Coverage** | **Reference** | **Identifier** | **Service Dates** | **Deductible** | **Payment Amount** | |
| Total Loss | Sales Tax Reimbursement | COLL | N/A | 10 JEEP LIBERTY 120330 | N/A | $0.00 | $621.55 | |

| **Total Payment Amount** | $621.55 |
|---|---|

**\*Full Description of Coverage:**

COLL      -   Collision

Form Z845 (07/16)

**EXHIBIT E**

| | | YEAR | MAKE | MODEL |
|---|---|---|---|---|

The used vehicle sold under this contract is sold by Dealer and accepted by Customer without any express OR implied warranties or representations. The sales person of the Dealer did not:

| | VEHICLE IDENTIFICATION NO. | | MILEAGE |
|---|---|---|---|
| | | | N/A |

**Initials** ___ 1. Refer to the condition of the vehicle by using phrases such as (or similar to) "cream of the crop", "cream puff", "a cherry", "like new", "in perfect condition" or "is reliable".

**Initials** ___ 2. Represent that the vehicle is "accident free" or "has never been in an accident" or "is something that will provide worry-free performance" or the like.

**Initials** ___ 3. Represent that the vehicle has been "safety checked", "inspected", examined" or "treated" other than the matters set forth on the attached list.

**Initials** ___ 4. Refer to the prior owner in any way.

**Initials** ___

I UNDERSTAND AND AGREE TO TRADE-IN THE VEHICLE DESCRIBED ABOVE TO DEALER UNDER THE TERMS SET FORTH ABOVE AND ON THE REVERSE SIDE. IF THE PAYOFF ON THE TRADE-IN VEHICLE THE CUSTOMER IS SELLING IS AN AMOUNT GREATER THAN SHOWN ABOVE, THE CUSTOMER AGREES TO PAY THE ADDITIONAL AMOUNT IN CASH UPON REQUEST. I certify that the above information about my trade-in is correct.

SIGNATURE OF CUSTOMER _____

| | | |
|---|---|---|
| SELLING PRICE | $ | 7200.00 |
| DEALER INSTALLED OPTIONS (SEE NO. 9 ON BACK) | | N/A |
| TOTAL SELLING PRICE | | 7200.00 |
| GROSS ALLOWANCE ON TRADE (DOES NOT NECESSARILY REFLECT ACTUAL VALUE) | | N/A |
| NET CASH DIFFERENCE | | 7200.00 |
| DOCUMENTARY FEE | | 175.94 |
| STATE SALES TAX | | 462.56 |
| COUNTY TAX | | N/A |
| COUNTY USE TAX | | N/A |
| CITY SALES TAX | | 74.01 |
| | | N/A |
| LICENSE, TRANSFER & TITLE FEES | | 221.00 |
| TOTAL BALANCE DUE | | 8133.51 |
| PLUS PAYOFF ON TRADE-IN (IF APPLICABLE) | | |
| LIEN HOLDER | | |
| REBATE (IF APPLICABLE) ASSIGNED TO: ☐ DEALER ☐ PURCHASER | | N/A |
| DOWN PAYMENT REC. NO. ☐ CASH ☐ CHECK ☐ CREDIT CARD | | |
| UNPAID BALANCE DUE | $ | 8133.51 |

NOTICE TO THE NEGOTIATED CASH SALE PRICE OF EACH VEHICLE, NO MORE THAN ___ MAY BE ADDED FOR DEALER COSTS AND OVERHEAD. THE ONLY OTHER ADDITIONAL CHARGES PERMITTED ARE DEALER ADDED OPTIONS, WARRANTY AND SERVICE CONTRACTS, INSURANCE AND THE ACTUAL COST OF LICENSE AND TITLE REGISTRATION AND TAXES. ADDITIONALLY, DEALERS MAY CHARGE A FEE NOT TO EXCEED $25.00 FOR THE OPTIONAL SERVICE OF ELECTRONICALLY PROCESSING VEHICLE TITLING AND REGISTRATION AND FOR PROVIDING REGISTRATION PLATES OR STICKERS.

**FINANCING TERMS**

**Initials** ___ **DEALER ARRANGED FINANCING.** In the event of a time sale, DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL AND UNLESS a finance source approves this order and agrees to purchase a retail installment contract between Customer and Dealer based on this order. As part of obtaining financing, Customer agrees to provide Dealer with a true, correct and complete credit application and to cooperate fully in obtaining financing including providing all supporting documentation. This agreement may be cancelled by Dealer if Dealer determines that it cannot obtain third party approval and may be cancelled by either party if no financing is obtained for Customer on the agreed terms within 15 business days of the date of this agreement. If the Contract is terminated as a result of the inability to obtain third party financing, Customer agrees to return the vehicle within 24 hours of notice from Dealer and Dealer agrees to return the Customer's trade and down payment, if applicable. Dealer may repossess the vehicle if Customer refuses to return it.

**Initials** ___ **IMMEDIATE DELIVERY - SHORT TERM FINANCING.** I accept immediate delivery and possession of the subject vehicle. In exchange for such possession, I promise to pay Dealer the remainder of the purchase price in accordance with the SHORT TERM FINANCING agreement attached hereto and made a part hereof. If I do not pay pursuant to the terms of the SHORT TERM FINANCING agreement, I understand that I will have breached this contract and will be liable to Dealer for damages as set out on the reverse of this contract and in the SHORT TERM FINANCING agreement.

**Initials** ___ **NO DEALER FINANCING.** I am tendering full payment for this subject vehicle at the time of this transaction or will make full payment within ___ days. Once this agreement is signed by me and accepted by Dealer regardless of when I take actual possession of the vehicle, it is fully binding. I understand that if I do not fulfill my obligations under the contract or if my check does not clear, I will be liable to Dealer for damages as set out on the reverse side.

**NO INCIDENTAL OR CONSEQUENTIAL DAMAGES.** The Customer shall in no event be entitled to recover from Dealer any incidental or consequential damages in connection with this Contract including without limitation, damages resulting from injury to property, loss of use, loss of time, loss of profits or loss of income, and including, without limitation any such damages arising from liability based on breach of warranty, contract, tort, strict liability or any other statutory or common law theory of liability.

NOTICE: DEALER SPECIFICALLY MAKES NO REPRESENTATION AS TO ANY AIR BAG ON THIS VEHICLE. PLEASE REFER TO THE MANUFACTURER'S WARRANTIES AND SPECIFICATIONS.

**Initials** ___ **THE VEHICLE REFERENCED IN THIS CONTRACT IS SOLD AS EQUIPPED AT TIME OF DELIVERY.**

**Initials** ___ **THIS CONTRACT DOES NOT PROVIDE ANY RIGHT TO RESCISSION OR A TRIAL PERIOD.**

**WARRANTY DISCLAIMERS AND OTHER INFORMATION**

**Initials** ___ **VEHICLE SOLD "AS IS".** The dealer makes no express or implied warranties with respect to the used vehicle sold hereunder. The Customer has not made the Dealer aware of any special or particular purpose for which he or she intends to use the vehicle and is not relying on the Dealer's skill or judgement to furnish a vehicle suitable for any such purpose. SPECIFICALLY, THE CUSTOMER IS NOT RELYING UPON ANY REPRESENTATIONS OF THE DEALER'S SALESPERSON, THE VEHICLE'S CURRENT CONDITION OR HOW THE VEHICLE WILL PERFORM OR IF THE VEHICLE HAS BEEN SAFETY CHECKED OR INSPECTED. **THE DEALER TO THE FULLEST EXTENT PERMITTED BY LAW, EXPRESSLY DISCLAIMS AND EXCLUDES ANY AND ALL WARRANTIES, WHETHER EXPRESSED OR IMPLIED, WITH RESPECT TO THE USED VEHICLE SOLD HEREUNDER, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND STATES THAT THIS IS AN "AS IS" SALE.**

**LIMITATION IN DURATION OF IMPLIED WARRANTIES.** To the extent that implied warranties cannot be disclaimed because the Dealer has entered into a service contract with the Customer or has provided a written warranty to the Customer concerning the purchased vehicle, Dealer hereby limits the period of any implied warranties, including warranties of merchantability and/or fitness for a particular purpose, to the duration of the service contract and/or warranty.

**FTC WINDOW STICKER.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THE CONTRACT. INFORMATION ON THE WINDOW FORM (BUYER'S GUIDE) OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT FOR SALE.

**VEHICLE EMISSIONS.** Dealer makes no representation or warranty that any vehicle sold hereunder has passed or will pass the inspection required by the Illinois Vehicle Emission Inspection Law, IL Rev. Stat. Ch. 95 1/2, par. 13A-101 et seq. Compliance is the responsibility of the Customer.

In the case of a service contract, coverage of this service contract is not provided by Grossinger Motors, its parent, subsidiaries or its affiliates.

THIS TRANSACTION IS NON-CANCELABLE AFTER THE SIGNING OF THIS AGREEMENT EXCEPT AS PROVIDED HEREIN. IF YOU FAIL TO COMPLY WITH YOUR OBLIGATION UNDER THIS CONTRACT, YOU WILL BE LIABLE FOR THE REASONABLE ATTORNEY'S FEE INCURRED BY DEALER IN THE ENFORCEMENT OF THE CONTRACT, AS WELL AS OTHER CHARGES (SEE NO. 8 ON REVERSE SIDE).

I ACKNOWLEDGE THAT DEALER AND ITS AGENTS AND REPRESENTATIVES HAVE MADE NO REPRESENTATION, AGREEMENTS OR PROMISES, CONCERNING THE CONTRACT, FINANCING OF THE VEHICLE BEING PURCHASED HEREUNDER, THAT DO NOT APPEAR IN WRITING.

THIS CONTRACT IS SUBJECT TO CORRECTION OF ANY MATHEMATICAL ERROR BY SALES OR OFFICE PERSONNEL. I CERTIFY THAT I AM 18 YEARS OF AGE OR OLDER. I ACKNOWLEDGE THAT I HAVE READ THE TERMS OF THIS CONTRACT AND THAT I HAVE RECEIVED A COPY OF THIS CONTRACT. I HAVE READ THE MATTER IN THE BACK OF THIS CONTRACT AND AGREE TO IT AS PART OF THIS CONTRACT THE SAME AS IF IT WERE PRINTED ABOVE MY SIGNATURE. I ACKNOWLEDGE THAT THE CONTRACT CONTAINED NO BLANK SPACES AT THE TIME OF SIGNING.

YOUR SIGNATURE BELOW CERTIFIES THAT "THE FUNDS USED FOR THIS TRANSACTION WERE ENTIRELY DERIVED FROM LEGAL SOURCES" AS REQUIRED BY FEDERAL LAW.

SIGNATURE OF PURCHASER(S) _____

APPROVED AND ACCEPTED BY: _____

THIS CONTRACT IS NOT VALID UNLESS SIGNED & ACCEPTED BY GROSSINGER MOTORS
**NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION**

FORM: 300

The Reynolds and Reynolds Company FL631479 Q (02/14)

**EXHIBIT F**



IDOR Home | IDES Home | Help ▾ | Contact ▾ | Privacy Policy

## Tax Rate Finder

**Log In**      **Tax Rate Finder**

[ Exit ]

**Tax Rate Finder**

| Local Government | : | Libertyville |
| --- | --- | --- |
| County | : | Lake |
| Location Code | : | 049 0018 9 |
| Rate as of | : | 7/30/2018 |

### Tax Rates

| Sales Taxes (retailers' and service occupation taxes) | General Merchandise | 7.000% |
| --- | --- | --- |
| | Qualifying Food and Drugs | 1.750% |
| | Vehicle (ST-556 and ST-556-LSE) | 7.000% |

- If the vehicle or trailer is titled and registered to a Chicago address, a Chicago Home Rule Tax of **1.250%** is imposed in addition to the vehicle rate listed above, making the rate **8.250%**.

- If the vehicle or trailer is titled and registered to an out-of-state location, you (the dealer) may be required to collect tax. Refer to ST-58, Reciprocal - Non-Reciprocal Vehicle Tax Rate Chart.

| | Aviation Fuel | 7.000% |
| --- | --- | --- |
| Use Taxes (use and service use taxes) | General Merchandise | 6.250% |
| | Qualifying Food and Drugs | 1.000% |
| | Vehicle (RUT-25) and RUT-25-LSE | 7.000% |
| | Aviation Fuel | 6.250% |
| Automobile Renting Taxes | Automobile Renting Tax (occupation) | 6.000% |
| | Automobile Renting Tax (use) | 5.000% |
| Telecommunication Taxes | Telecommunication Taxes | 13.000% |

**Note:** For your unemployment insurance tax rate, login to your MyTax Illinois account, open your Unemployment Insurance account, and click on the "Rate History" tab.

[ **Back** ]

**FILED**
**10/13/2020 12:08 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

|  |  |  |
|---|---|---|
| Shauna Connors, individually and on behalf of a class of similarly situated persons, | ) ) ) |  |
| Plaintiff, | ) ) | **Case No. 20CH00000584** |
| v. | ) ) | **CLASS ACTION** |
| Progressive Universal Insurance Company, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) |  |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Shauna Connors ("Plaintiff"), through her attorneys, respectfully moves this Court, pursuant to 735 ILCS 5/2-801, *et seq.*, to certify for class action treatment the following class, as described in Plaintiff's Class Action Complaint:

> All persons in Illinois who insured a vehicle for physical damage coverage under an automobile insurance policy issued by Progressive Universal Insurance Company who suffered a total loss of a covered vehicle at any time during the applicable period of limitations prior to the filing of this lawsuit, who were not paid the full amount of the title and transfer fees and applicable sales taxes as part of their total loss claim.

Plaintiff will file a supporting Memorandum of Law in due course.

WHEREFORE, Plaintiff Shauna Connors prays that this Court enter an order pursuant to 735 ILCS 5/2-801 certifying for class treatment the class set forth herein.

Respectfully submitted,

SHAUNA CONNORS, individually, and on behalf
of all others similarly situated,

By:  /s/ Jeffrey A. Berman_____
     Counsel for the Plaintiff and the Class

Jeffrey A. Berman – ARDC #6196251
Patrick J. Solberg – ARDC #6243928
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847/368-1500
Email:  jberman@andersonwanca.com
Email:  psolberg@andersonwanca.com

Counsel for the Plaintiff and the Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2020, I electronically filed the foregoing Motion for Class Certification with the Clerk of the Court using the court's electronic filing system which will send notification of such filings to all counsel of record and a copy will be served upon Defendant along with the Summons and Complaint.

/s/ Jeffrey A. Berman
Counsel for the Plaintiff and the Class

**FILED**
**11/16/2020 10:36 AM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

| | |
|---|---|
| Shauna Connors, individually and on behalf of a class of similarly situated persons, | ) ) ) |
| Plaintiff, | ) ) Case No. 2020CH00584 |
| v. | ) ) |
| Progressive Universal Insurance Company, | ) ) |
| Defendant. | ) ) |

## NOTICE OF FILING EXECUTED WAIVER OF SERVICE

**PLEASE TAKE NOTICE** that on November 16, 2020, I caused to be filed with the

Clerk of the Circuit Court of the Nineteenth Judicial Circuit of Lake County, 18 North County

Street, Waukegan, Illinois 60085, the *Executed Waiver of Service,* a copy of which is attached

hereto and hereby served upon you.

/s/ Jeffrey A. Berman
One of the Attorneys for Plaintiff

Jeffrey A. Berman – ARDC 6196251
Patrick J. Solberg – ARDC 6243928
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, state that on November 16, 2020, I served a true and correct copy of

this Notice of Filing and the Executed Waiver of Service, on counsel of record below:


[    ]    U.S. mail, by depositing it in the U.S. mail at Rolling Meadows, IL, at or
       before 5:00 p.m., with proper postage prepaid to the address listed below

**X**    By email transmission

[    ]    Overnight delivery to the address listed below

[    ]    Personal delivery to the address listed below

[    ]    Facsimile machine from Rolling Meadows, IL, to the telephone number listed
       below

> Karl A. Bekeny
> Jennifer L. Mesko
> Tucker Ellis LLP
> 950 Main Avenue, Suite 1100
> Cleveland, OH  44113-7213
> karl.bekeny@tuckerellis.com
> jennifer.mesko@tuckerellis.com
>
> Christopher t. Gardino
> Tucker Ellis LLP
> 233 South Wacker Drive, Suite 6950
> Chicago, IL  60606
> christopher.gardino@tuckerellis.com



> s/ Jeffrey A. Berman
> One of Plaintiff's Attorneys

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT,
LAKE COUNTY, ILLINOIS**

Shauna Connors, individually and on behalf )
of a class of similarly situated persons,    )
         )
        Plaintiff,    )
         )
v.        )    **Case No. 20 CH 584**
         )
Progressive Universal Insurance Company, )
         )
        Defendant.    )

## WAIVER OF SERVICE

TO:    <u>Jeffrey A. Berman / Anderson + Wanca</u>

I have received your request to waive service of a Summons pursuant to 735 ILCS 5/2213 and Illinois Supreme Court Rule 101(f) in this action along with a copy of the Class Action Complaint, the Plaintiff's Motion for Class Certification, and this Waiver of Service form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion within sixty (60) days from November 13, 2020, the date of this Waiver form. If I fail to do so, a default judgment will be entered against the entity I represent.

Date: November 13, 2020

                      */s/ Jennifer L. Mesko*
                      *Signature of the attorney*

<u>Progressive Universal Insurance Company</u>
*Party waiving service of summons*

                  Karl A. Bekeny
Christopher T. Gardino           Jennifer L. Mesko
Tucker Ellis LLP                 Tucker Ellis LLP
233 South Wacker Drive, Suite 6950    950 Main Avenue, Suite 1100
Chicago, Illinois 60606          Cleveland, OH 44113-7213
Tel: 312.624.6300              Tel: 216-696-4579
christopher.gardino@tuckerellis.com    karl.bekeny@tuckerellis.com
                  jennifer.mesko@tuckerellis.com