UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAUNA CONNORS,

    Plaintiff,

v.

PROGRESSIVE UNIVERSAL INSURANCE COMPANY,

    Defendant.

No. 20 CV 7342

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shauna Connors had a car-insurance policy with defendant Progressive. When her Jeep was totaled, Progressive paid her the actual cash value of the totaled car, minus her deductible, and a sales tax reimbursement. Connors bought a replacement car, and alleges that Progressive's reimbursement was about $70 less than what she paid in taxes and fees on the new car. She seeks to represent a class of similarly underpaid policyholders. She brings a breach-of-contract and an unjust-enrichment claim against Progressive, and Progressive moves for judgment on the pleadings. For the reasons that follow, the motion is granted.

**I.    Legal Standards**

The same standards apply to a motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b). *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). The motion should be granted only when there are no disputed issues of material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Unite Here Loc. 1 v. Hyatt Corp.*, 862

F.3d 588, 595 (7th Cir. 2017). A court reviewing a 12(c) motion is confined to the matters in the pleadings and draws inferences in favor of the nonmoving party. *Id.*

## II. Background

Connors had a car-insurance policy with Progressive. [1-1] ¶¶ 2, 40.[1] Under the policy's collision coverage provision, Progressive would pay for "loss" caused by a collision. [1-1] ¶¶ 5, 41–43. The "Limits of Liability" section limited Progressive's payment to the lowest of the actual cash value of the car, the amount necessary to replace it, the amount necessary to repair it, or an alternative amount specified on the declarations page. [1-1] ¶ 48; [1-1] at 49. Actual cash value was determined by the market value, age, and condition of the vehicle. [1-1] ¶ 49. The policy provided that Progressive would either pay for the loss in money, or by repairing or replacing the damaged or stolen vehicle. [1-1] ¶ 50.

Connors suffered a total loss of a covered vehicle and submitted a property damage claim to Progressive. [1-1] ¶¶ 30, 63–64. A third-party vendor estimated the market value of her Jeep to be $6,808.43, with a settlement value of $6,308.43 after subtracting the $500 deductible. [1-1] ¶¶ 65–66. Progressive paid the lienholder the settlement value, plus a "sales tax reimbursement" of $621.55. [1-1] ¶¶ 68–69. That figure encompassed $196 for title and transfer fees, plus $425.55 in sales tax. [1-1] ¶ 76.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint. [1-1].

Connors alleges this figure underestimated her sales tax and title and transfer fees. Progressive assessed sales tax at 6.25%, instead of 7%, the rate at the time Connors replaced her car. [1-1] ¶¶ 73–74. A 7% tax rate on the actual cash value would have been $476. [1-1] ¶ 78. And when Connors bought a replacement vehicle, she paid $221 for title and license transfer fees. [1-1] ¶ 72. So Progressive underpaid her sales tax by $51.04 and her title and transfer fees by $25, shortchanging her by $76.04 in total. [1-1] ¶¶ 78–80.

Connors bring a putative class action against Progressive, alleging breach of contract and unjust enrichment. Progressive moves for judgment on the pleadings.[2]

---

[2] The court has jurisdiction over these state-law claims under the Class Action Fairness Act, which creates federal jurisdiction when a class has 100 or more class members, at least one class member is diverse from at least one defendant, and more than $5 million is in controversy. *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017); *see* 28 U.S.C. §§ 1332(d)(2), 1453(b). Connors alleges that the class is likely several thousand members, and minimal diversity is met: Connors is a citizen of Illinois and Progressive is a citizen of Wisconsin and Ohio. [1] ¶¶ 11, 17. The amount-in-controversy allegations, however, are less straightforward. Once the removing party has plausibly explained how the stakes exceed $5 million, the case stays in federal court unless it is legally impossible for the plaintiff to recover that much. *Roppo*, 869 F.3d at 578; *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). Progressive estimates that it's processed 31,399 claims in the relevant time period. [22] at 3. Using Connors's total figure of $221 for title and transfer fees, Progressive says the amount in controversy is potentially $6.9 million ($221 multiplied by 31,399). (Progressive didn't include an estimate for unpaid sales tax, but alleges that unpaid sales tax would increase the amount in controversy as well.) But Connors's claim is that Progressive underpaid her for sales tax and title and transfer fees, not that it withheld them completely. If everyone in the class was underpaid by the same amount as Connors, the amount in controversy would only be about $2.4 million, even including unpaid sales tax ($76 multiplied by 31,399). It's possible to read Connors's claim narrowly as only applying to policyholders who Progressive underpaid, rather than denied title and transfer fees completely. But Connors alleges that Progressive always owes title and transfer fees to an insured who suffered a total loss, either as part of the replacement costs of the car, or as part of the actual cash value of the totaled car, regardless of whether the insured replaced the car or not. So it is plausible that the amount in controversy exceeds $5 million, and it's not legally impossible for the putative class to recover more than $5 million. CAFA jurisdiction is proper.

3

### III. Analysis

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019). Only breach is at issue here.

Under Illinois law, a court's goal in interpreting an insurance contract is to "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020) (quoting *Hobbs v. Hartford Ins. Co.*, 214 Ill.2d 11, 17 (2005)). In addition to the policy language itself, state insurance regulations are automatically incorporated into the insurance policy as a matter of law. *Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 661 (7th Cir. 2020).

Connors's policy obligated Progressive to pay for "loss" caused by a collision. The policy included a limit of liability, specifying that Progressive wouldn't pay more than the lower of either the actual cash value of the wrecked car, the cost to replace or repair it, or an alternative amount. As Connors reads the policy, this limit-of-liability section obligated Progressive to pay the full cost of replacing her vehicle, including sales tax and title and transfer fees on the new car. But a "limit of liability" section "doesn't promise to pay these costs regardless of whether the insured incurs them." *Sigler*, 967 F.3d at 660. Rather, it describes "the *most*" that an insurance company will pay in the event of a covered loss. *Id.*; *see also Coleman v. Garrison Prop. & Cas. Ins. Co.*, 839 Fed. App'x 20, 21–22 (7th Cir. 2021) ("[A] limit on liability

4

is the most that an insurer will pay its policyholder, not the amount that the insurer promises to pay."). So Connors's treatment of the limit-of-liability provision as an obligation to pay is wrong, and Progressive did not breach the contract by failing to reimburse her for the full cost of replacing her car.

Instead of replacement costs, Progressive paid Connors the actual cash value of the totaled car, minus her deductible. Connors's alternative argument is that "actual cash value" is ambiguous, so should be construed against the insurer to encompass sales tax and transfer and title fees. The term isn't ambiguous. The policy states that actual cash value is determined by the market value, age, and condition of the totaled car when the loss occurred. [1-1] ¶ 49. The factors to consider are straightforward. And the market value, age, and condition of the wrecked car all speak to the worth of the car at the time of the collision. There's no reasonable suggestion that those metrics are in any way related to the cost of taxes and fees for a new vehicle. To the extent Connors argues that the policy entitles her to both the actual cash value of the totaled car and replacement fees for a new car, that's wrong too. The policy limits the settlement amount to the lowest of the actual cash value *or* the vehicle replacement fees, among other options. The "or" is disjunctive—the cost of replacing the vehicle and the actual cash value of the totaled vehicle are alternatives, not cumulative sources of recovery.

Nor can Connors state a claim under the state administrative code, which provides that, in the event of a total loss, an insurer may either replace the insured car or pay the insured driver a cash settlement. Ill. Admin. Code tit 50, § 919.80(c)(1),

5

(2); *Sigler*, 967 F.3d at 661. If the insurance company pays a cash settlement, and the insured buys or leases a new car within 30 days of the settlement, the insurance company must reimburse the insured for "the applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the vehicle." Ill. Admin. Code tit 50, § 919.80(c)(3)(A)(i). That provision applies "*only* when the insured purchases or leases a new vehicle within a specified time and substantiates that he has incurred these costs." *Sigler*, 967 F.3d at 661. If the insured doesn't confirm that she paid those taxes and fees within 33 days of receiving the settlement, "the company shall not be required to reimburse" her. Ill. Admin. Code tit 50, § 919.80(c)(3)(A)(i). In lieu of that reimbursement procedure, the insurance company "may" instead pay taxes and transfer and title fees at the time of settlement. *Id.*

According to Connors's complaint, she submitted a bill of sale detailing the taxes and fees she paid to Progressive "as part of her submissions for the Claim." [1-1] ¶ 72. But she doesn't say when she submitted those documents. According to her response brief, she bought her replacement car 11 days after the accident and "informed" Progressive "of the sales transaction" the same day she bought the new car. [18] at 13. Notwithstanding that those allegations aren't in the complaint, merely telling Progressive that she bought a new car is not enough. Connors must "substantiate[] the purchase and payment of those taxes and fees by submitting appropriate documentation to the insurer" within 33 days of receiving the settlement. *Sigler*, 967 F.3d at 661. Progressive was obligated to reimburse her "if and only if" she followed the procedures as laid out in the regulation. *Id.* at 662. And that

6

Progressive insured Connors's new car is not enough, on its own, to establish that Connors timely substantiated her payment of sales tax and title and transfer fees. Without those allegations, she can't state a claim for breach of contract under the administrative code. *Sigler*, 967 F.3d at 661 (dismissing breach-of-contract claim where plaintiff did not allege that he incurred or substantiated vehicle-replacement costs before the requisite deadline); *see also Coleman*, 839 Fed. App'x at 21–22 (same).

Connors also fails to state a claim for unjust enrichment. Unjust enrichment is based on an implied contract. "Where there is a specific contract that governs the relationship of the parties, the doctrine has no application." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017) (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014)). Since Connors and Progressive had an insurance policy, she cannot state a claim for unjust enrichment. *Id.* (upholding dismissal of unjust-enrichment claim where there was "no question" that insurance policy governed the parties' relationship and plaintiff attached policy to the complaint). Alternatively, a plaintiff can bring an unjust-enrichment claim based on conduct such as fraud or duress. In that case, unjust enrichment rises and falls with the underlying claim. *Id.* at 741; *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Connors doesn't allege any standalone claim of fraud or duress to support the unjust-enrichment claim, so that claim is dismissed.

Leave to amend should be freely given unless amendment would be futile. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). Because a contract governs this dispute, amendment of the unjust-enrichment

7

claim would be futile. So that claim is dismissed with prejudice. But Connors suggests that she can add allegations that she timely substantiated payment of her sales tax and title and transfer fees. And in Progressive's jurisdictional supplement, Progressive asserts that it paid tax and fee reimbursements only to customers who complied with the regulatory code, suggesting that Connors was one such customer. So Connors may amend that claim.

## IV. Conclusion

Progressive's motion for judgment on the pleadings [15] is granted. Count I is dismissed without prejudice. Count II is dismissed with prejudice. If Connors doesn't file an amended complaint by May 21, 2021, the dismissal will convert to one with prejudice.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 30, 2021